UNITED STATES of America, Appellant.

v.

Ronnie BOOKHARDT, Appellee.

No. 00–3107.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 5, 2001.

Decided Jan. 29, 2002.

Suzanne Grealy Curt, Assistant U.S. Attorney, argued the cause for appellant. With her on the briefs were Wilma A. Lewis, U.S. Attorney at the time the briefs were filed, John R. Fisher, Thomas J. Tourish, Jr., and Arvind K. Lal, Assistant U.S. Attorneys. Roscoe C. Howard, Jr., U.S. Attorney, entered an appearance.

A.J. Kramer, Federal Public Defender, argued the cause and filed the briefs for appellee. Tony W. Miles, Assistant Federal Public Defender, entered an appearance.

Before: GINSBURG, Chief Judge, and SENTELLE and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

This appeal turns on the question of whether, if a police officer arrests a defendant on a ground that proves invalid, the arrest is nonetheless lawful if the same officer had probable cause to arrest the defendant for a different offense. We answer that question in the affirmative, and, accordingly, reverse the district court's suppression of evidence discovered in a search incident to the arrest of defendant Ronnie Bookhardt.

I

On November 19, 1999, Detective Caesar Casiano, a member of the Washington, D.C. Metropolitan Police Department, was driving an unmarked car on Washington's Southeast Freeway. As Casiano was traveling in the far left lane, he was forced onto the highway's shoulder by Bookhardt's car. Reentering the road, Casiano observed Bookhardt driving at high speed and weaving in and out of traffic without using turn signals. Although (as Casiano subsequently testified) he was prepared to let Bookhardt get away, Bookhardt exited at the same ramp as Casiano, and Casiano pulled him over at a stoplight.

When Casiano asked Bookhardt for his driver's license, Bookhardt replied that he did not have it with him; he gave the officer his Social Security number instead. Upon radioing a police dispatcher, Casiano learned that Bookhardt's license had expired on October 14, 1999—approximately one month before. Casiano then informed Bookhardt that he was under arrest for driving with an expired license. Incident to that arrest, Casiano searched Bookhardt's car and found two guns, one under the driver's seat and the second under a floormat on the driver's side. A grand jury subsequently indicted Bookhardt for unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), Bookhardt moved to suppress the use of the guns as evidence. His motion did not discuss the arrest for driving with an expired permit. Instead, Bookhardt argued that the initial traffic stop was unlawful because Detective Casiano lacked probable cause to believe that he had committed a traffic violation, and contended that the guns should be suppressed because they were discovered as a result of the unlawful stop. Following a hearing, the district court denied Bookhardt's motion. The court found Casiano's testimony to be credible, ruled that he had had probable cause to stop Bookhardt for reckless driving and to arrest him for driving with an expired license, and held that

the discovery of the guns was the product of a lawful search incident to that arrest.

At the time of the district court's ruling, neither the parties nor the court realized that, although driving with a license expired for more than ninety days is a criminal offense under District of Columbia law, D.C.Code § 40–301(d), driving with a license expired for ninety days or less is not criminal, *id.* § 40–301(d–1).[1] The prosecutor learned of the ninety-day exception before the jury was sworn on the morning of trial and promptly informed the court and defense counsel, who renewed Bookhardt's motion to suppress. The court found that Casiano had had probable cause to arrest Bookhardt for reckless driving.[2] It ruled, however, that since the detective had chosen instead to arrest Bookhardt for driving with the expired license, and since it was now apparent that the arrest on that charge was invalid, the search of the car incident to arrest was also invalid and its fruits must be suppressed. Because the guns found in Casiano's search were essential to proof of the firearms offense for which Bookhardt was indicted, their suppression effectively ended the prosecution. Thereafter, the government filed a notice of appeal pursuant to 18 U.S.C. § 3731, the statute that governs appeals by the United States in criminal cases.

## II

■ Before reaching the question of whether the car search was lawful, we must first address Bookhardt's motion to dismiss this appeal on the ground that the government failed to file, in a timely fashion, the certification required by § 3731. That section provides, inter alia, that:

1. Recodified in 2001 as D.C.Code § 50–1401.01(d) & (d–1).

2. As discussed *infra* Part IV, reckless driving is a criminal offense in the District of Colum-

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence ... in a criminal proceeding, not made after the defendant has been put in jeopardy ..., *if the United States [A]ttorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.*

. . . .

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

The provisions of this section shall be liberally construed to effectuate its purposes.

18 U.S.C. § 3731 (emphasis added). In this case, the district court's order granting the motion to suppress was entered on September 13, 2000. The government's notice of appeal was filed October 12, 2000, within the thirty-day window provided by the statute. The required certification, however, was not filed until November 2, 2000, approximately three weeks after the notice of appeal. Bookhardt contends that the government's certification was untimely and that the appeal should therefore be dismissed.

Section 3731 does not expressly state whether the government must file its certification by the time the notice of appeal is filed, by the end of the thirty-day period in which the appeal may be taken, or by some other time. Although several circuits have inferred from the purposes underlying the section that certification should be made at

bia. *See* D.C.Code § 40–712(b) & (c), recodified in 2001 as D.C.Code § 50–2201.04(b) & (c).

the time the notice of appeal is filed,[3] this circuit has never decided the question. Nor need we do so today. As the government has represented that from this point forward its policy will be to file the § 3731 certification on or before the date it files the notice of appeal, we do not expect this issue to arise again. Appellant's Opp'n to Appellee's Mot. to Dismiss at 4 n.2. More important, for the reasons stated below, it is not necessary to decide the question in order to resolve the appeal presently before us.

Assuming that the government filed its certification late, its tardiness is necessarily fatal only if it is a jurisdictional bar to consideration of the government's appeal. Although the statute expressly makes the filing of the certification a prerequisite to appeal, *see* 18 U.S.C. § 3731 (providing that "an appeal by the United States shall lie ... *if* the United States [A]ttorney certifies...." (emphasis added)), it says nothing about the consequences of failing to file in a timely fashion—a not surprising state of affairs given, as noted above, that the statute does not mention a filing deadline for certification at all. Every circuit to consider the issue has concluded that untimely filing is not a jurisdictional bar.[4] Instead, while emphasizing that § 3731 requires a " 'conscientious preappeal analysis by the responsible prosecuting official,' "

*United States v. Smith,* 263 F.3d 571, 577 (6th Cir.2001) (quoting *United States v. Carrillo-Bernal,* 58 F.3d 1490, 1494 (10th Cir.1995)), courts have treated untimely certification as a filing irregularity under Federal Rule of Appellate Procedure 3(a)(2), for which the remedy is a matter of the court's discretion. Such treatment is appropriate, as Rule 3(a)(2) states that "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal."

▪ In this case the government did file a timely notice of appeal, and, accordingly, its failure arguendo to file the accompanying certification in a timely manner "does not affect the validity of the appeal," but rather leaves us with discretion to act as we "consider[ ] appropriate." Fed. R.App. P. 3(a)(2). As to how to exercise that discretion, the Sixth Circuit has recently observed:

[C]ourts typically consider a variety of factors, including: when the certificate was filed; the reason for the failure to timely file it; whether the government did in fact engage in a conscientious pre-appeal analysis; whether the government acknowledges that the certification requirement should be taken seriously;

**3.** *See, e.g., United States v. Smith,* 263 F.3d 571, 578 (6th Cir.2001) (holding that the certification requirement "is intended to ensure a conscientious pre-appeal analysis by the responsible prosecuting official," and that "[t]he purpose of the certification is clearly defeated when the government files its certification after initiating an appeal") (internal quotation marks omitted); *see United States v. Salisbury,* 158 F.3d 1204, 1207 (11th Cir. 1998); *United States v. Bailey,* 136 F.3d 1160, 1163 (7th Cir.1998); *United States v. Miller,* 952 F.2d 866, 875 (5th Cir.1992); *see also United States v. Hanks,* 24 F.3d 1235, 1238 (10th Cir.1994) (suggesting that the certifica-

tion should be filed within the thirty-day period allowed for filing the notice of appeal).

**4.** *See United States v. Smith,* 263 F.3d 571, 578 (6th Cir.2001); *United States v. Romaszko,* 253 F.3d 757, 760 (2d Cir.2001); *In re Grand Jury Subpoena,* 175 F.3d 332, 337 (4th Cir.1999); *United States v. Gantt,* 194 F.3d 987, 997 (9th Cir.1999); *United States v. Salisbury,* 158 F.3d 1204, 1206 (11th Cir.1998); *United States v. Bailey,* 136 F.3d 1160, 1163 (7th Cir.1998); *United States v. Carrillo-Bernal,* 58 F.3d 1490, 1492–93 (10th Cir.1995); *United States v. Miller,* 952 F.2d 866, 875 (5th Cir.1992).

any delay or prejudice to the defendant; whether the appeal raises important legal issues needing appellate clarification; and whether the appeal should be heard in the interest of justice, or for any other significant reason.

*Smith,* 263 F.3d at 578 (internal quotation marks omitted). We have no need to assess the relative import of these factors, as each weighs in favor of permitting the government's appeal to go forward in the instant case.

■ First, the government filed the required certification only three weeks after filing the notice of appeal, without any complaint or prompting by either the defendant or the court.[5] Second, the government has represented that it did not file earlier because it was unaware of any requirement to do so. The government's representation on the point is credible given that the statute does not contain an express timing requirement, that this circuit has never before addressed the question, and that Bookhardt's experienced counsel has conceded that he, too, was unaware of such a requirement. Mot. for Leave to Late File Mot. to Dismiss Appeal at 1.

Nor is there any reason to doubt the government's representation that it engaged in a conscientious pre-appeal analysis and that this analysis yielded the conclusion that an appeal under § 3731 was warranted. Appellant's Opp'n to Appellee's Mot. to Dismiss at 14.[6] The suppressed evidence was essential, not merely "material," to the government's case, and, as we discuss below, the contention that it was wrongly suppressed is sufficiently reasonable to eliminate any concern that the appeal was taken "for purpose of delay." Moreover, the government acknowledges that the certification requirement must be taken seriously, *id.* at 5, as confirmed by the fact that it filed the certification within three weeks of the notice of appeal, without any suggestion from the defendant or the court that the certification was missing or late. The defendant, who has been free on bond pending this appeal, has been unable to articulate any way in which that three-week hiatus—which did not delay resolution of the appeal at all—prejudiced him.[7] Finally, although the legal issue at stake here may not be of transcendent importance, it surely is significant and apparently is in need of some clarification.

Under these circumstances, we conclude that it is "appropriate," Fed. R.App. P.

5. Bookhardt did not file his motion to dismiss until September 24, 2001, almost eleven months after the government filed its § 3731 certification.

6. Bookhardt contends that a reason to doubt does arise from the government's request for a thirty-day extension of this court's briefing schedule, made after its filing of the § 3731 certification, on the ground that the government needed additional time to complete its evaluation of whether to pursue the appeal, including time to obtain authorization from the Solicitor General. *See* U.S. Attorney's Manual § 9–2.170(A)(2) (providing that any appeal of a decision adverse to the government must be approved by the Solicitor General). But there is nothing inconsistent between the United States Attorney's certifi-

cation that an appeal meets the threshold requirements of § 3731—that it is not taken for purpose of delay and that the suppressed evidence is substantial proof of a material fact—and the need for additional time to determine whether the case meets other criteria that the Department of Justice may impose on government appeals in criminal cases. Nor is there anything in § 3731, which requires certification by "the United States [A]ttorney," that compels the United States Attorney to obtain approval from the Solicitor General before filing a certification.

7. *Cf. Smith,* 263 F.3d at 580 (noting that "[a]lthough pre-trial release is a deprivation of liberty, [the defendant] has not shown substantial prejudice beyond that deprivation").

3(a)(2), and in the interest of justice to hear this appeal. Accordingly, even assuming that the government's certification was not timely filed, we deny defendant's motion to dismiss the appeal.

### III

■ In considering an appeal from a decision of a district court, we review de novo the court's conclusions regarding questions of law, *United States v. Weaver*, 234 F.3d 42, 46 (D.C.Cir.2000), as well as its determinations of probable cause, *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). We review the district court's "findings of historical fact only for clear error and ... give due weight to inferences drawn from those facts," *id.*, as well as to the court's determination of witness credibility, *United States v. Christian*, 187 F.3d 663, 666 (D.C.Cir.1999).

■ The government contends that the warrantless search of the passenger compartment of Bookhardt's car, which yielded the two guns that were suppressed in this case, was lawful under the well-established "search incident to arrest" exception to the Fourth Amendment's warrant requirement. *See New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).[8] The validity of a search grounded upon that exception depends on the lawfulness of the arrest, which in turn requires probable cause to believe that a crime has been committed. *See Christian*, 187 F.3d at 667. As the government concedes, although Detective Casiano arrested Bookhardt for driving with an expired license, he did not have probable cause to do so because it is not a crime under District of Columbia law to

drive with a license that has been expired for ninety days or less. *See* Appellant's Br. at 12, 16 (conceding that Bookhardt could not lawfully be arrested on the expired license charge); *see also id.* at 9 n. 7 (acknowledging for purposes of appeal that, at the time of the arrest, Casiano was aware that Bookhardt's license had expired on October 14, 1999). Accordingly, the remaining questions are: (1) whether Bookhardt's arrest was lawful if the detective had probable cause to believe that Bookhardt had committed a different crime (reckless driving), and (2) whether Casiano did in fact have such probable cause. We consider the first question in this Part and the second in Part IV below.

More than twenty-five years ago, this court stated that "an arrest will be upheld if probable cause exists to support arrest for an offense that is not denominated as the reason for the arrest by the arresting officer." *United States v. Joyner*, 492 F.2d 655, 656 (D.C.Cir.1974). In that case, we held that even if Florida police had wrongly arrested the defendant for an out-of-state crime, the arrest (and therefore the use of evidence obtained incident thereto) was lawful because they had probable cause to arrest him for violations of Florida law. *Id.* In so holding, we cited a case of even earlier vintage, *Bell v. United States*, in which we had held that "[t]he question is not what name the officer attached to his action; it is whether, in the situation in which he found himself, he had reasonable ground to believe a felony had been committed and that the [defendants] had committed it." 254 F.2d 82, 86 (D.C.Cir.1958). In *Bell*, we ruled that despite the fact that the offense for which the defendants had been arrested, "investi-

---

**8.** As the Court further held in *Belton*, a search incident to arrest " 'is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable"

search under that Amendment.' " 453 U.S. at 459, 101 S.Ct. at 2863 (quoting *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).

gation of housebreaking," was not a crime, the fact that probable cause existed to arrest the defendants for a felony was sufficient to render the arrest lawful. *Id.* at 86–87.[9]

■ Other circuits have similarly concluded that, even if probable cause does not support arrest for the offense charged by the arresting officer, an arrest (and search incident thereto) is nonetheless valid if the same officer had probable cause to arrest the defendant for another offense.[10] This result is consistent with the Supreme Court's holding, in *Whren v. United States,* that the existence of probable cause must be determined objectively from the facts and circumstances known to the officers at the time of the arrest without regard to the "actual motivations" or "[s]ubjective intentions" of the officers involved. 517 U.S. 806, 813, 116 S.Ct. 1769,

135 L.Ed.2d 89 (1996). In *Whren,* police officers purportedly stopped a car for a traffic violation, subsequently arresting the occupants on narcotics charges after observing a bag of drugs. The defendants alleged that the traffic violation was merely a pretext, and suggested that the officers' real motivation for the stop was to search for drugs. The Supreme Court held that even if the traffic stop was a pretext for the search, the officers' subjective intent was irrelevant; under the Fourth Amendment, the stop was lawful because there was probable cause to believe the driver had committed a traffic violation. *Id.* at 812–13, 819, 116 S.Ct. at 1773–74, 1776.[11] So too, here. Notwithstanding Casiano's subjective intent to arrest Bookhardt for driving with an expired license, the arrest was lawful if Casiano had probable cause to believe the defendant guilty of reckless driving.

9. At oral argument, Bookhardt sought to distinguish between an arrest like his own, where the crime charged was not actually a crime, and an arrest in which the charged offense was a crime but the officer lacked probable cause to believe it had been committed. We see no reason why such a distinction should be important, since an arrest in either circumstance is equally invalid and the only question under our precedents is whether another, valid ground for arrest exists. Moreover, the above recitation of the facts in *Bell,* which involved a charged offense that was not an offense at all, makes clear that the distinction the defendant seeks to draw would not assist him in distinguishing this circuit's precedents.

10. *See, e.g., Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994) (holding that "[p]robable cause need only exist as to any offense that could be charged under the circumstances"); *United States v. Kalter,* 5 F.3d 1166, 1168 (8th Cir.1993) (upholding arrest because, although the police lacked probable cause to arrest the defendant for violation of the concealed-weapon statute that was the actual reason for the arrest, they had probable cause to arrest him for violating a separate ordinance requiring that a gun be car-

ried in a locked container); *United States v. Atkinson,* 450 F.2d 835, 838 (5th Cir.1971) (declining to decide whether an arrest for false pretenses was legal because the officer had probable cause to arrest the defendant for operating a vehicle with an invalid license tag); *Klingler v. United States,* 409 F.2d 299, 303–06 (8th Cir.1969) (upholding arrest because, although the police lacked probable cause to arrest the defendant for vagrancy, the charged offense, they had probable cause to believe that he had committed robbery); *see also* WAYNE R. LaFAVE, SEARCH AND SEIZURE § 1.4(d) (3d ed.1996) (collecting cases); *cf. United States v. Dhinsa,* 171 F.3d 721, 725 (2d Cir.1998) (upholding traffic stop on the basis of an observed traffic violation, notwithstanding detectives' reliance on a different ground).

11. In *Arkansas v. Sullivan,* the Court made clear that *Whren* applies not only to civil traffic stops, but to criminal traffic arrests as well. 532 U.S. 769, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994 (2001) (reversing suppression of drug-related evidence and holding that it is irrelevant whether a traffic-violation arrest was a pretext for a drug search, as long as there was probable cause for the traffic arrest).

Bookhardt argues that *Whren* is inapplicable to this case because he does not contend that Detective Casiano arrested him on a pretext, but rather out of the detective's ignorance of the relevant D.C.Code provision. We fail to see, however, why the police should be in a better position if they prevaricate about the reason for arresting a defendant than if they make an honest mistake of law. As long as Casiano had an objectively valid ground upon which to arrest Bookhardt, the fact that he articulated an invalid one does not render the arrest unlawful. *Cf. United States v. Dhinsa,* 171 F.3d 721, 725 (2d Cir.1998) ("A fair reading of *Whren* ... leads to the conclusion that an observed traffic violation legitimates a stop even if the detectives do not rely on the traffic violation."). Indeed, were we to hold otherwise, we would do no more than create an incentive for the police "to routinely charge every citizen taken into custody with every offense" they can think of, "in order to increase the chances that at least one charge would survive"—yielding no additional protection of civil liberties while adding considerably to the burden placed upon both defendants and police. *United States v. Atkinson,* 450 F.2d 835, 838 (5th Cir.1971) (quoted with approval in WAYNE R. LAFAVE, SEARCH AND SEIZURE § 1.4(d), at 111 n.29 (3d ed.1996)).[12]

Although the district court agreed that Detective Casiano had probable cause to arrest Bookhardt for reckless driving, it declined to rely on that ground to validate the search, holding that *Knowles v. Iowa,* 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), rather than *Whren,* was the applicable Supreme Court precedent. In *Knowles,* the Court held that an officer may not conduct a search incident to arrest when, although the officer has probable cause to make an arrest, he issues a citation instead of arresting the defendant. *Knowles* found that neither of the two historical justifications for the search-incident-to-arrest exception—the need to disarm the subject in order to take him into custody and the need to preserve evidence for later use at trial—applies when a defendant is not actually arrested and taken into custody. *Id.* at 116–19, 119 S.Ct. at 487–88. The key point in *Knowles,* therefore, was not that the officer had a lawful ground for arrest upon which he did not rely, but that he did not arrest the defendant at all. When an officer does take a defendant into custody, the historical justifications for the search-incident-to-arrest exception apply regardless of whether the officer articulates the wrong reason for making the arrest.[13] Accordingly, because Casiano did take Bookhardt into custody, *Knowles* is without application to this

**12.** Bookhardt also argues that even if *Whren* does apply, it still requires the government to show that there was probable cause to believe he was "driving with an expired license," albeit based upon objective circumstances rather than the officer's subjective belief. Appellee's Br. at 14. This formulation, however, misapprehends *Whren* because, contrary to the rule in that case, it focuses on the officer's subjective motivation for making the arrest—that is, his belief that Bookhardt had violated the prohibition on driving with an expired license.

**13.** In *United States v. Robinson*—a case in which the defendant, much like Bookhardt, was arrested for the offense of driving while his license was revoked—the Court also made clear that the applicability of these historical justifications need not be litigated on a case-by-case basis. "The authority to search the person incident to a lawful custodial arrest," the Court held, "does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." 414 U.S. at 235, 94 S.Ct. at 477; *accord Belton,* 453 U.S. at 461, 101 S.Ct. at 2864.

case,[14] and the car search must be upheld if the detective had probable cause to arrest the defendant.

## IV

■ Bookhardt argues that even if a lawful arrest for violating the reckless driving statute would have rendered the search of his car valid, his arrest was unlawful because there was no probable cause to believe he had violated the statute. This argument is readily dismissed.

The D.C.Code makes reckless driving a criminal offense, D.C.Code § 40–712(c), and provides that:

> Any person who drives any vehicle upon a highway carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.

*Id.* § 40–712(b).[15] Detective Casiano's testimony, credited by the district court, established that Bookhardt drove at a high rate of speed, greater than that of the surrounding traffic, that he wove in and out of lanes without signaling, and that he forced Casiano's vehicle off the road, nearly causing a collision. Whether or not the defendant actually exceeded the speed limit, Bookhardt's misconduct was serious and more than sufficient to establish both that he drove "carelessly and heedlessly in willful … disregard of the … safety of others," and that he drove "without due caution and circumspection … in a manner so as to endanger … any person."

*See Swailes v. District of Columbia*, 219 A.2d 100, 102 (D.C.1966) (holding that "it is possible to drive well within the prescribed speed limit and still be a menace to the safety of others" under an earlier but identical version of the reckless driving statute). Hence, there is no doubt that Casiano had probable cause to arrest Bookhardt for the crime of reckless driving.

## V

We conclude that, notwithstanding the government's failure to file its § 3731 certificate contemporaneously with its notice of appeal, this case is properly before us. We further hold that if a police officer arrests a defendant on a ground that ultimately proves invalid, the arrest is nonetheless lawful if the same officer had probable cause to arrest the defendant for a different criminal offense. Finally, we find that the officer who arrested defendant Bookhardt had probable cause to do so for the offense of reckless driving. Because Bookhardt's arrest was therefore lawful, the search incident to that arrest was lawful as well, and the evidence obtained as a result of the search is admissible at defendant's trial. Accordingly, the order of the district court suppressing that evidence is

*Reversed.*

---

**14.** *Accord United States v. McLaughlin*, 170 F.3d 889, 891 & n. 2 (9th Cir.1999) (holding *Knowles* inapplicable to cases in which defendants are arrested).

**15.** Recodified in 2001 as D.C.Code § 50–2201.04(b) & (c).