United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued April 12, 2002 Decided June 21, 2002 

 No. 01-3107

 United States of America, 
 Appellee

 v.

 John Q. Wesley, 
 Appellant

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 01cr00017-01)

 Nicholas H. Cobbs, appointed by the court, argued the 
cause and filed the briefs for appellant.

 Elizabeth H. Danello, Assistant U.S. Attorney, argued the 
cause for appellee. With her on the brief were Roscoe C. 
Howard, Jr., U.S. Attorney, John R. Fisher and Roderick L. 
Thomas, Assistant U.S. Attorneys.

 Before: Sentelle and Garland, Circuit Judges, and 
Silberman, Senior Circuit Judge.

 Opinion for the Court filed by Circuit Judge Garland.

 Garland, Circuit Judge: John Q. Wesley was arrested for 
violating the terms of his pretrial release and then convicted 
for unlawfully possessing a gun and drugs at the time of his 
arrest. He challenges his convictions on the ground that the 
evidence the government used against him at trial was ob-
tained in violation of the Fourth Amendment. Finding no 
constitutional violation, we affirm the judgment of the district 
court.

 I

 Wesley had the misfortune of being arrested three times at 
almost the same location, near the intersection of Stanton 
Road and Trenton Place, S.E., in Washington, D.C. While 
the only convictions at issue here are those that resulted from 
the last of the three arrests, we describe the other two as a 
necessary prologue.

 In June 2000, police officers found Wesley near the 
Stanton-Trenton intersection in possession of fourteen bags 
of crack cocaine. As a condition of his release pending trial, 
the District of Columbia Superior Court ordered him to stay 
away from a three-block radius of the 1700 block of Trenton 
Place (the block immediately adjoining Stanton Road). In 
October 2000, still awaiting trial for his June arrest but 
apparently undeterred by it, Wesley was again found near the 
Stanton-Trenton intersection. On that date, Officer Andre 
Martin--who was unaware of Wesley's June arrest--discover-
ed Wesley on Trenton Place about thirty feet from Stanton 
Road, this time in possession of six bags of crack cocaine. 
Again, Wesley was arrested. Again, the D.C. Superior Court 
released him pending trial on the condition that he stay away 
from the Stanton-Trenton intersection. The October stay-
away order expressly barred Wesley from the "Intersection 
of Trenton Pl. & Stanton Rd. SE," but incorporated by 

reference the terms of the June order.1

 Finally, we come to the arrest that generated the convic-
tions from which Wesley now appeals. A few weeks after 
arresting Wesley in October 2000, Officer Martin learned 
(through the police computer) that the court had released 
Wesley subject to an order to stay away from the "Intersec-
tion of Trenton Pl. & Stanton Rd. SE." Martin did not know 
of the June order's more specific injunction to stay away from 
a three-block radius of Trenton Place, or that the October 
order had incorporated the June injunction by reference. 
From his frequent patrols in the area, however, Officer 
Martin did know that Wesley was once again frequenting the 
intersection. Accordingly, on November 14, 2000, Martin told 
his colleague, Officer Rodney Daniels, that he thought Wesley 
was likely to be in the area, and the two officers drove there 
to investigate.

 Martin's suspicions were well founded: Wesley was sitting 
in his car on Stanton Road, parked approximately "three to 
four cars" from the point at which Stanton Road and Trenton 
Place cross. With him was his cousin, Antonio Hagens. 
When the two police officers pulled up beside his car, Wes-
ley's "eyes got real big," a reaction that both Martin and the 
district court interpreted as expressing "shock." Wesley 
tried to escape by backing out of his parking place, but the 
officers stopped him. Officer Martin opened the car door and 
removed Wesley. Martin then placed him under arrest for 
violating the October stay-away order, handcuffed him, and 
put him in Martin's patrol car. Officer Daniels removed 
Hagens and handcuffed him as well.

 After securing Wesley, Martin looked under the driver's 
seat where Wesley had been sitting and discovered a loaded, 

__________
 1 The October order, stating the conditions of Wesley's release 
and signed by the defendant, provided: "1329 Notice in F3717-00 / 
Stay Away: Intersection of Trenton Pl. & Stanton Rd. SE." The 
phrase "1329 Notice" is a reference to D.C. Code s 23-1329, which 
prohibits violations of the terms of pretrial release. "F3717-00" is 
the case number assigned to Wesley's June appearance in Superior 
Court.

nine-millimeter pistol. In the car's ashtray, he found two 
ziplock bags of crack cocaine. Daniels and another officer 
who had arrived on the scene then searched the car's trunk 
and found another quantity of crack and a number of empty 
ziplocks.

 A grand jury indicted Wesley for possession of cocaine base 
with intent to distribute, 21 U.S.C. s 841(b)(1)(B)(iii); using 
or carrying a firearm during a drug-trafficking offense, 18 
U.S.C. s 924(c)(1)(A); and possession of a firearm by a 
convicted felon, id. s 922(g)(1). In a motion to exclude the 
government's use of the gun and drugs as evidence, Wesley 
charged that his arrest was unlawful, and that even if it were 
not, the subsequent search exceeded the permissible scope of 
a search incident to arrest. The district court denied the 
motion, the jury convicted, and the court sentenced Wesley to 
fifteen years in prison.

 II

 Although the police searched Wesley's car without a war-
rant, such a search is permissible if it falls within the familiar 
"search incident to arrest" exception to the Fourth Amend-
ment's warrant requirement. See New York v. Belton, 453 
U.S. 454, 460 (1981). To qualify for the exception, (i) the 
arrest must be lawful, and (ii) the subsequent search must not 
exceed the scope permitted by the exception. See United 
States v. Bookhardt, 277 F.3d 558, 564 (D.C. Cir. 2002); In re 
Sealed Case 96-3167, 153 F.3d 759, 767 (D.C. Cir. 1998). As 
he did below, Wesley challenges the search of his car as 
failing to meet either criterion. In considering this kind of 
challenge, we review de novo the district court's conclusions 
of law, United States v. Weaver, 234 F.3d 42, 46 (D.C. Cir. 
2000), as well as its determinations of probable cause, Ornelas 
v. United States, 517 U.S. 690, 699 (1996). However, we 
review "findings of historical fact only for clear error and ... 
give due weight to inferences drawn from those facts." Id.

 A

 Wesley's first contention is that his arrest for violating the 
October stay-away order was unlawful. To have been lawful, 

the arrest must have been based upon probable cause to 
believe that a crime was being committed. See Bookhardt, 
277 F.3d at 565; see also Atwater v. City of Lago Vista, 532 
U.S. 318, 323, 354 (2001) (holding that an arrest is lawful if an 
officer has probable cause to believe that the defendant 
committed a misdemeanor in his presence). Although the 
intentional violation of a pretrial release order is a criminal 
offense under District of Columbia law, D.C. Code 
s 23-1329(c), Wesley contends that Officer Martin lacked 
probable cause to believe that he was violating the October 
order. He argues that, since the government concedes Mar-
tin knew only that the court had ordered Wesley to stay away 
from the "intersection" of Trenton Place and Stanton Road, 
and since Martin did not find Wesley at that intersection but 
instead found him three or four cars away, the officer did not 
possess the requisite probable cause.

 Probable cause to arrest "requires the existence of 'facts 
and circumstances within the officer's knowledge that are 
sufficient to warrant a prudent person in believing that the 
suspect has committed, is committing, or is about to commit 
an offense.' " United States v. Dawkins, 17 F.3d 399, 403 
(D.C. Cir. 1994) (quoting Michigan v. DeFillippo, 443 U.S. 31, 
37 (1979) (alterations omitted)). Both parties argue that the 
question before this court is whether a reasonable person, 
knowing what Martin knew at the time of Wesley's arrest, 
would have believed that the location at which the officer 
found Wesley fell within the October order's command that 
Wesley stay away from the "Intersection of Trenton Pl. & 
Stanton Rd. SE." We note, however, that there is no ques-
tion that this location did in fact fall within the compass of 
the June order, and that Wesley knew it did. The October 
order, which Wesley signed, incorporated by reference the 
June order's command that he stay not merely three car 
lengths away, but a full three blocks away.2

__________
 2 We therefore reject Wesley's suggestion (not quite framed as an 
argument) that the October order was too ambiguous to put him on 
notice of the place from which he was barred. We also agree with 
the district court that Wesley's look of shock upon seeing the 

 At oral argument, counsel for Wesley contended that the 
only place that qualifies as the "intersection" of Trenton Place 
and Stanton Road is the spot where the two streets cross. 
We cannot agree that a reasonable person could not read the 
word more broadly. See, e.g., Merriam Webster's Collegiate 
Dictionary 612 (10th ed. 1996) (defining "intersection" as "a 
place or area where two or more things (as streets) intersect" 
(emphasis added)). Indeed, when pressed at oral argument, 
counsel for Wesley conceded that "intersection" could encom-
pass a place "very close to" the crossing point, and we regard 
it as splitting hairs to suggest that one car length falls within 
that description but that three do not. Nor does the district 
court's suggestion, that a block in every direction from the 
crossing would qualify, strike us as unreasonable.

 Perhaps more important, what Officer Martin knew at the 
time of the November arrest included the location of the 
arrest that had led to the October stay-away order. On 
October 23, Martin himself had arrested Wesley--not at the 
spot where Trenton Place and Stanton Road cross, but rather 
some thirty feet away on Trenton. The district court found 
that location to be "approximately the same distance" from 
the intersection as the location at which Martin again arrest-
ed Wesley in November. And it was eminently reasonable 
for the officer to believe that the October order was intended 
to keep Wesley at least as far from the crossing as he had 
been at the time of his October arrest.3

 Wesley mounts two further attacks on the legality of the 
arrest that require no more than a brief mention. First, he 

__________
officers, as well as his effort to escape, was further evidence that he 
knew he was in violation of the stay-away order.

 3 Wesley also argues that it was unreasonable for Martin to 
regard the stay-away order as encompassing more than the cross-
ing of the two roads because Martin knew that Wesley lived close 
by. An expansive reading of the order, Wesley complains, would 
have kept him from obtaining access to his home. This argument is 
answered, however, by the district court's finding that Wesley did 
not have to pass by the place at which he was arrested to gain 
access to his residence.

contends that Martin made the arrest in bad faith, because 
Martin admitted that he made a "special trip" to the area 
with the expectation that he would find the defendant and 
would then be able to arrest him. There is, however, nothing 
improper about a police officer going to a location for the 
express purpose of investigating whether a crime is being 
committed. There certainly is no rule of law that requires an 
officer to wait patiently until a lawbreaker happens to cross 
his field of vision.4

 Second, Wesley argues that it would have been more 
"prudent" if, before arresting him, Martin had conducted an 
investigatory stop to determine why he was parked on Stan-
ton Road. Wesley is correct that such a stop would have 
been permissible under the rule of Terry v. Ohio, 392 U.S. 1 
(1968). But it is not Wesley's place--or ours--to dictate 
which among an array of lawful tactics a police officer must 
use when confronting a suspect on the street. Because 
Martin had probable cause not just to stop Wesley but to 
subject him to a full custodial arrest, that arrest was lawful.

 B

 Wesley's second contention is that, even if his arrest was 
lawful, Martin's search of the passenger compartment of 
Wesley's car exceeded the permissible scope of a search 
incident to arrest.5 It did so, Wesley argues, because by the 

__________
 4 Martin's motivations are, in any event, irrelevant to the validity 
of the arrest. As the Supreme Court held in Whren v. United 
States, "the existence of probable cause must be determined objec-
tively from the facts and circumstances known to the officers at the 
time of the arrest without regard to the 'actual motivations' or 
'[s]ubjective intentions' of the officers involved." Bookhardt, 277 
F.3d at 565 (quoting Whren v. United States, 517 U.S. 806, 813 
(1996) (alteration in original)).

 5 Wesley does not dispute that, if the search of the car's passen-
ger compartment was valid, then the discovery of the gun and drugs 
in that area justified the subsequent search of the trunk. See 
United States v. Turner, 119 F.3d 18, 19-21 (D.C. Cir. 1997).

time of the search, the police had already removed him from 
the car and placed him in handcuffs. We disagree.

 In Chimel v. California, the Supreme Court held that, 
incident to a lawful arrest, the police may properly search the 
area within the arrestee's "immediate control" without a 
warrant. 395 U.S. 752, 763 (1969). Although such searches 
are justified by the need "to disarm and to discover evi-
dence," the Court subsequently held them permissible re-
gardless of whether, in the circumstances of a particular case, 
"there was present one of the reasons supporting" the excep-
tion. United States v. Robinson, 414 U.S. 218, 235 (1973); 
see United States v. Chadwick, 433 U.S. 1, 14-15 (1977), 
abrogated on other grounds, California v. Acevedo, 500 U.S. 
565 (1991); United States v. Abdul-Saboor, 85 F.3d 664, 667 
(D.C. Cir. 1996).

 The Supreme Court addressed the proper application of 
Chimel to automobile searches in New York v. Belton. Not-
ing the difficulty that lower courts had had in applying 
Chimel in the context of the arrest of an occupant of a 
vehicle, the Court determined to adopt "a straightforward 
rule, easily applied, and predictably enforced." Belton, 453 
U.S. at 459. The rule the Court announced was that "when a 
policeman has made a lawful custodial arrest of the occupant 
of an automobile, he may, as a contemporaneous incident of 
that arrest, search the passenger compartment of that auto-
mobile." Id. at 460.

 In United States v. Brown, we noted that the search in 
Belton had taken place after the officer had already removed 
the defendant from the car, and therefore interpreted Belton 
as establishing the principle that the area under a defendant's 
"immediate control" for Chimel purposes must be determined 
as of the time of the arrest rather than of the search. 
Brown, 671 F.2d 585, 587 (D.C. Cir. 1982). Rejecting the 
argument that the principle of Belton applies only to automo-
biles, we upheld the search of a pouch taken from the 
defendant at the time of the arrest, even though the search 
took place after the pouch was moved out of the reach of her 
control. As long as a search is "contemporaneous with" and 

an "integral part of" a lawful arrest, we said, the police may 
search a container that was "in hand or within reach when the 
arrest occurs," even if the officer has since seized it and 
gained exclusive control over it. Id. We have subsequently 
affirmed this rule--that the "determination of immediate 
control must be made when the arrest occurs"--on several 
occasions, and noted that it is in accord with the views of our 
sister circuits. Abdul-Saboor, 85 F.3d at 668; id. at 670 
(collecting cases); see Sealed Case, 153 F.3d at 768; United 
States v. Tavolacci, 895 F.2d 1423, 1429 (D.C. Cir. 1990).6

 Because Wesley was seated in his automobile at the time 
Officer Martin arrested him, the holdings in Belton and 
Brown dictate that Martin's search of the car's passenger 
compartment was lawful. Wesley, however, contends that 
another of our opinions, United States v. Lyons, 706 F.2d 321 
(D.C. Cir. 1983), renders the search improper. In Lyons, we 
held that the search of a closet in the hotel room where the 
defendant had been arrested, a search that took place after 
the defendant had been handcuffed and seated in a chair near 
the doorway to the room, was not a valid search incident to 
arrest because it was "inconceivable that [the defendant] 

__________
 6 See also Northrop v. Trippett, 265 F.3d 372, 379 (6th Cir. 2001) 
("[T]he right to search an item incident to arrest exists even if that 
item is no longer accessible to the defendant at the time of the 
search. So long as the defendant had the item within his immediate 
control near the time of his arrest, the item remains subject to a 
search incident to arrest."); Curd v. City Court of Judsonia, 141 
F.3d 839, 842 n.9 (8th Cir. 1998) ("It matters not whether [the 
defendant] was capable of reaching the purse at the time of the 
search"); United States v. Nelson, 102 F.3d 1344, 1346-47 (4th Cir. 
1996) (arrestee handcuffed prior to search of his bag, which was 
accessible at the time of arrest); United States v. Hudson, 100 F.3d 
1409, 1419 (9th Cir. 1996) (arrestee handcuffed before search of his 
bedroom); United States v. Mitchell, 64 F.3d 1105, 1110 (7th Cir. 
1995) (arrestee handcuffed before search of his briefcase); 3 Wayne 
R. LaFave, Search and Seizure s 6.3(c), at 312 & n.81 (3d ed. 1996 
& Supp. 2000) (noting the "Belton-izing" of search-incident-to-arrest 
law in non-automobile contexts and the application of a time-of-
arrest standard in such cases).

could have gained access" to the closet. Id. at 330-31. 
Wesley urges that we apply Lyons here and invalidate the 
search on the ground that, by the time the officers searched 
the passenger compartment of the car, they had already 
removed and handcuffed Wesley and Hagens, making it "in-
conceivable" that either of the two could have gained access 
to weapons or evidence contained therein.

 We have previously noted that there is "some tension 
between Lyons, which seems to focus on whether the space 
searched was accessible at the time of the search, and our 
earlier decision in Brown and later decision in Abdul-Saboor, 
both of which focused on the time of the arrest." Sealed 
Case, 153 F.3d at 768. But whatever the continuing validity 
of Lyons in the context of non-automobile searches, Belton's 
bright-line rule, that incident to arrest the police may search 
the passenger compartment of an arrestee's automobile, vali-
dates the search in this case. Belton proclaimed its rule 
without caveat, notwithstanding that in that very case the 
occupants had in fact been removed from the automobile. 
The dissenters in Belton understood the case to establish a 
flat rule, applicable regardless of the status of the defendants 
at the time of the search. See 453 U.S. at 468 (Brennan, J., 
dissenting) ("Under the approach taken today, the result 
would presumably be the same even if Officer Nicot had 
handcuffed Belton and his companions in the patrol car 
before placing them under arrest...."). And this court has 
read it that way as well. See Sealed Case, 153 F.3d at 767-68 
("In New York v. Belton, the Supreme Court held that when 
the police lawfully arrest the occupant of an automobile, they 
may 'as a contemporaneous incident of that arrest, search the 
passenger compartment,' even if the occupant has been re-
moved and is no longer in the car at the time of the search." 
(quoting Belton, 453 U.S. at 460) (emphasis added)); see also 
Abdul-Saboor, 85 F.3d at 668-69.7

__________
 7 In Abdul-Saboor, we also noted the Belton Court's statement of 
the analogous point that " 'no search or seizure incident to lawful 
custodial arrest would ever be valid [if] by seizing an article ... an 
officer may be said to have reduced that article to his exclusive 

 Indeed, to take Wesley's view would largely render Belton 
a dead letter. The search of a passenger compartment 
incident to arrest would then be permissible only if the officer 
left the defendant in the car, in which event the officer would 
have to crawl over him to effectuate the search, or if the 
officer removed the defendant but did not (or could not) 
effectively secure him. As we have previously warned, such a 
rule "might create a perverse incentive for an arresting 
officer to prolong the period during which the arrestee is kept 
in an area where he could pose a danger to the officer." 
Abdul-Saboor, 85 F.3d at 669; see Sealed Case, 153 F.3d at 
768. And it would certainly vitiate the Supreme Court's 
intention to create "a straightforward rule, easily applied, and 
predictably enforced," Belton, 453 U.S. at 459, by requiring 
courts to determine retrospectively whether a given arrestee 
had been so insufficiently secured as to warrant the officer's 
search of the passenger compartment.

 Accordingly, we read Belton as creating a bright-line rule 
that, incident to and contemporaneous with a valid custodial 
arrest of the occupant of a vehicle, the police may search the 
passenger compartment of the vehicle without regard to 
whether the occupant was removed and secured at the time of 
the search. This reading is in accord with that of every other 
circuit that has considered the question.8 Applying that rule 
to Wesley's case, we conclude that the search of his automo-
bile and the consequent discovery of the gun and drugs were 

__________
control.' " Abdul-Saboor, 85 F.3d at 669 (quoting Belton, 453 U.S. 
at 461-62 n.5 (alterations in original) (internal quotation marks 
omitted)).

 8 See, e.g., United States v. Humphrey, 208 F.3d 1190, 1202 (10th 
Cir. 2000); United States v. Sholola, 124 F.3d 803, 817-18 (7th Cir. 
1997); United States v. Doward, 41 F.3d 789, 791, 792 n.1 (1st Cir. 
1994); United States v. Moorehead, 57 F.3d 875, 877-78 (9th Cir. 
1995); United States v. Mans, 999 F.2d 966 (6th Cir. 1993); 3 
Wayne R. LaFave, Search and Seizure s 7.1(c), at 448 & n.79 (3d 
ed. 1996 & Supp. 2000) (concluding that "under Belton a search of 
the vehicle is allowed even after the defendant [is] removed from it, 
handcuffed, and placed in the squad car," and collecting cases).

lawful, and that the subsequent use of the evidence at trial 
was therefore permissible.

 III

 Finding no constitutional infirmity in either Wesley's arrest 
or the search of his automobile, we affirm the judgment of the 
district court.

 So ordered.