UNITED STATES of America,

v.

James T. COGDELL, Defendant.

No. CR. 03–190(RJL).

United States District Court, District of Columbia.

Sept. 2, 2003.

Charles Joseph Harkins, Jr., John S. Irving, John J. Manning, U.S. Attorney's Office, Washington, DC, for Plaintiff.

Jon W. Norris, Michelle M. Peterson, Federal Public Defender for D.C., Washington, DC, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

LEON, District Judge.

The defendant has moved to suppress evidence obtained from a car pursuant to a search incident to arrest.[1] Upon consideration of the motions, the opposition thereto, the evidence presented at the hearing, and for the following reasons, the Court denies the defendant's motion to suppress the evidence.

## I. Background

The essential facts in this case were credibly testified to by Officer Gregory Moss of the United States Capitol Police at an evidentiary hearing on July 30, 2003: At approximately 6:30 pm on April 6, 2003, Officer Moss was on duty on the corner of First Street and G Street in Northeast District of Columbia ("District"). Tr. of Mot. Hrg., July 30, 2003, at 8. Officer Moss observed a silver car, which was driven by the defendant, approach southbound on First Street and stop at the intersection of First Street and G Street. Officer Moss noticed that the car did not have a license plate (or tag) affixed to the front of the car, but, as the car proceeded through the intersection,[2] observed that it did have a Maryland plate attached to its rear. *Id.* at 9. Because he knew that Maryland is a state that requires a license plate to be visible on both the rear and front of the vehicle, Officer Moss decided to conduct a traffic stop. *Id.* Between the time the officer decided to stop the car and he actually pulled up behind it, the defendant had already stopped the car in front of the 500 block of First Street. Officer Moss parked his cruiser behind the defendant and activated his emergency overhead lights. *Id.* at 10. As Officer Moss was

---

1. The initial suppression motion indicated that the defendant might be seeking to additionally suppress certain statements he made to the police. At the suppression hearing, however, defense counsel made it clear that the defense is only seeking to suppress evidence found pursuant to the officers' search. Tr. at 92.

2. The defendant maintains that the front license plate was located on the lower right-hand corner of the inside of the windshield just above the dashboard. *Id.* at 79–80. Photos taken by the Crime Scene Search officers reveal what appears to be a license plate on the lower right-hand side of the front windshield. It is unclear, however, whether that plate was either affixed with tape (as the defendant contends) or resting on the dashboard or, for that matter, whether it was in that position at the time the defendant drove by the officer. *See e.g.,* Def.'s Exh. 5. Either way, even if it had been in that position there is no reason to believe the officer would have been able to see it before he stopped the defendant.

broadcasting his location and the tag number, the passenger in the front seat exited the car, heading for the train station *Id.* at 11.

Officer Moss then approached the driver and asked for his license and registration. The defendant falsely claimed that he did not have his driver's license on him.[3] Instead he provided Officer Moss with the name, date of birth, and Social Security number of a "Michael Jackson," one of the aliases the defendant claims to have used over the past thirty to forty years. *Id.* at 12. Indeed, the defendant conceded at the suppression hearing that he provided Officer Moss with the alias because he knew there were two outstanding warrants out against him in the name, James Cogdell. *Id.* at 13, 78, 81, 85.

Assuming the defendant had a Maryland license to go with the Maryland tags, Officer Moss returned to his cruiser and requested that the dispatcher investigate the Maryland records for a license fitting that description. Officer Moss learned from the dispatcher that the Maryland license issued in that name was suspended. *Id.* at 13, 74–75.

Accordingly, Officer Moss returned to the defendant's vehicle and initiated an arrest by asking the defendant to step out of the car. The defendant insisted that he in fact had a valid permit, but complied with the officer's directive. *Id.* at 14–15, 87. After arresting the defendant for driving without a valid permit, Officer Moss and his backup officer who had arrived at the scene conducted a search of the auto incident to the arrest. *Id.* at 14–15. The backup officer found a revolver between the front driver seat and the front passenger seat. *Id.* at 15. Officer Moss found the additional Maryland registration tag in the glove box and placed it on the car's front seat. *Id.* at 18–19.

## II. Discussion

The defendant argues that the evidence found in the vehicle should be suppressed because the officer had neither reasonable suspicion to stop the vehicle, nor probable cause to arrest the defendant. The government responds that the search conducted incident to the arrest was justified because the officers had reasonable suspicion to make a traffic stop and probable cause to arrest the defendant. The Court agrees that the traffic stop and the subsequent arrest were valid.

First, Officer Moss had reasonable suspicion that the defendant violated a traffic law, which, in turn, justified the traffic stop. *United States v. Mitchell,* 951 F.2d 1291, 1295 (D.C.Cir.1991) ("The Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one.") (citing *United States v. Montgomery,* 561 F.2d 875, 880 (D.C.Cir.1977)). Officer Moss observed that the silver car driven by the defendant did not have a front tag. Since Maryland law mandates that cars display registration plates on the front of the car, Md. Transp.Code Ann § 13–410, Officer Moss had enough of a reason to believe that the defendant committed a traffic violation. Even if the additional license plate had been taped to the lower right corner of the inside of the windshield, as the defendant contends,[4]

---

3. The defendant's D.C. driver's license, bearing his picture, actual name—James Cogdell—and date of birth, was later found in his wallet at the station house while he was being booked.

4. Officer Moss credibly testified, however, that the license plate was never attached to the inside of the windshield and that he found that license plate inside the car's glove compartment.

such an arrangement was not necessarily "clearly visible" to an outside observer, as the statute requires. Md. Transp. Code Ann § 13–411(c)(2)(iii) (directing that the registration plate be "securely fastened to the vehicle ... in a place and position to be clearly visible"). Moreover, it should be noted that even if the license plate had been attached in the lower right corner of the inside of the front windshield, and even if it was clearly visible to an outside observer, Officer Moss conducted the traffic stop with a good faith belief that the defendant had committed a traffic violation because he did not observe a front tag when the defendant drove the car through the intersection. *See United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000); *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir.1999). Thus Officer Moss had reasonable suspicion that the defendant violated a traffic law.

■■■ Second, Officer Moss and the backup officer had probable cause to arrest the defendant and conduct a search incident to that arrest. It is well-established that police officers can conduct an automobile search incident to arrest. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) ("[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."). However, in

determining whether the search was valid, a court must first determine whether the arrest itself was lawful, which in turn depends on whether there was probable cause to believe that the defendant had committed a crime. *See Wesley*, 293 F.3d at 545 (citing *United States v. Bookhardt*, 277 F.3d 558, 564 (D.C.Cir.2002); *In re Sealed Case 96–3167*, 153 F.3d 759, 767 (D.C.Cir.1998)). Here, the defendant falsely denied having a driver's license on him and provided Officer Moss with false identification information supposedly relating to his driver's license. By his own admission, the defendant did this in order to avoid being arrested on two outstanding warrants. When the officer investigated the validity of the alias' license in Maryland,[5] the dispatcher informed the officers that the alias' Maryland license had been suspended. The officer's assumption, in the absence of contrary information, that his license was a Maryland license was reasonable. The fact the officer did not check to see what if anything the false information he had been given yielded in D.C. did not render the arrest unlawful. The officers acted reasonably in believing that the defendant had violated D.C. law by driving with a suspended license from another state. *See generally* D.C.Code §§ 50–1401.01(c), 50–1401.02. For these reasons, the officers had probable cause to arrest the defendant for having an invalid

---

**5.** Officer Moss credibly testified that the defendant did not specify in any way in what jurisdiction his license was issued. Tr. at 53. Defendant, by contrast, claimed that he initially informed the officer that his license was in the District of Columbia. Tr. at 78. The Court does not find the defendant's testimony on this point credible, notwithstanding defense counsel's efforts to contrast the officer's testimony with his preliminary hearing testimony that the defendant complained that the officer had not checked with the "Department of Motor Vehicles." An assertion of that na-

ture by a person being placed under arrest does not constitute a sufficient clarification, or correction, of the defendant's driving permit status that should, in effect, require the officer to run a second check on the biographical information he was provided as it relates to the District of Columbia. It is interesting to further note that the defendant testified that the driver's license with the name Michael Jackson and the 1949 date of birth he gave the officer bears his brother's picture, not his.

permit and to conduct a search of the automobile incident thereto.

### III.  Order

For the above-stated reasons, it is hereby

**ORDERED** that defendant's motion to suppress evidence [# 10] is DENIED;

**ORDERED** that the defendant's motion to suppress statements [# 10] is DENIED;

**SO ORDERED.**