ROGERS, Circuit Judge,
dissenting:
The question in this appeal is whether, despite a mistake of law, the police had an objectively reasonable valid basis for stopping Booker for violating District of Columbia regulations on vehicle tags. Although I agree that the officers had reasonable suspicion to investigate, upon seeing a temporary tag in the front windshield, whether Booker’s car had a tag properly displayed on the rear, there is no evidence to support the conclusion that the officers’ subsequent failure to notice the rear tag was objectively reasonable, much less to support speculation that the officers “were not close enough” to see the rear tag, Op. at 724.
“Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional.” United States v. Coplin, 463 F.3d 96, 101 (1st Cir.2006) (citing United States v. McDonald, 453 F.3d 958, 961-62 (7th Cir. 2006); United States v. Chanthasouxat, 342 F.3d 1271, 1277-80 (11th Cir.2003)); see United States v. Cole, 444 F.3d 688, 689 (5th Cir.2006). But see United States v. Bueno, 443 F.3d 1017, 1024 (8th Cir. 2006). A stop is lawful despite a mistake of law, however, if an objectively reasonable valid basis for the stop nonetheless exists. See United States v. Southerland, 486 F.3d 1355, 1358-59 (D.C.Cir.2007); see also United States v. Delfin-Colina, 464 F.3d 392, 399 (3d Cir.2006); cf. United States v. Bookhardt, 277 F.3d 558, 565 (D.C.Cir.2002). “Whether a stop is reasonable turns on whether the facts, ‘viewed *727 from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion’ that a traffic violation has occurred.” Southerland, 486 F.3d at 1359 (quoting Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)); see also United States v. Hill, 131 F.3d 1056, 1059 (D.C.Cir.1997). “[S]tops premised on mistakes of fact ... generally have been held constitutional so long as the mistake is objectively reasonable.” Coplin, 463 F.3d at 101 (citing United States v. Miguel, 368 F.3d 1150, 1153 (9th Cir.2004); United States v. Cashman, 216 F.3d 582, 587 (7th Cir.2000)).
District of Columbia law provides that “[i]t shall be unlawful ... [f]or any person to operate any motor vehicle ... upon any public highway of the District of Columbia ... [i]f such motor vehicle ... does not have attached thereto and displayed thereon the identification tags required therefor.” D.C.Code § 50-1501.04(a)(l)(B). District of Columbia regulations provide that “vehicles identified by a dealer’s tag ... shall display only one (1) valid identification tag on the rear of the vehicle.” Mun. Reg. tit. 18, § 422.2. The evidence shows that upon seeing Booker’s approaching car, one of three officers in an unmarked car driving in the opposite direction noticed the temporary tag in the front windshield. See Op. at 723. They decided to stop Booker’s car because they thought that District of Columbia law required the tag to be displayed in brackets on the front of the car. See id. at 719 (citing Mem. Op. of Oct. 25, 2005 at 2, 2005 WL 3211424). Despite their mistake of law, the officers nonetheless had an objectively reasonable basis to suspect that Booker did not have a properly displayed tag on the rear of his car and to investigate further. However, the record does not support the further conclusion that the officers’ failure to notice the rear tag on Booker’s car was objectively reasonable. The three officers were members of the auto theft unit of the Metropolitan Police Department, which investigates stolen cars, fraudulent tags, and other “things of that nature,” Tr. Nov. 18, 2003 at 5, and they had ample opportunity, prior to stopping Booker, to determine whether there was a tag on the rear of Booker’s ear and failed to do so, instead relying on a mistake of fact that was no longer reasonable.
After noticing the temporary tag in the windshield of Booker’s approaching vehicle, the officers “made a U-turn” in their car and “a series of turns” to catch up with Booker. Id. at 8. “From the point where [the officers] made the U turn until the point where [they] stopped [Booker after seeing his parked car],” there were no vehicles between the officers’ car and Booker’s car. Id. “[T]o indicate to [Booker’s] vehicle that it should stop,” the officers “[p]ulled directly behind it.” Id. (emphasis added); see id. at 7. When the officers finally caught up to Booker’s car, after coming around a corner, Booker was in the process of exiting the car in that his feet were on the ground. Id. at 18-19.
The district court found that the initial stop of Booker was lawful. By the time one of the three officers reached Booker and handcuffed him, however, the district court found that “[Booker] had, at best, the chance to take three steps away from the car.” Id. at 5. Further, the passenger did not start running until after the officer had exited his car, identified himself as a police officer, and ordered the men to stop. Id. at 2. Nonetheless, the district court found that the officers’ failure to notice the rear tag was reasonable because when they pulled up to Booker’s parked car, they were “distracted by the immediate departures of the driver and the passenger; indeed when the passenger took flight, their attention was understandably diverted.” Id. at 9. This court adopts that *728 finding, stating that prior to that time “the officers were not close enough” to see the rear tag. Op. at 724. Neither the district court’s finding nor this court’s speculation that the officers “were not close enough,” id., to see the rear tag can absolve the government of its failure to meet its burden to show that the stop was lawful. See, e.g., United States v. Davis, 235 F.3d 584, 587 (D.C.Cir.2000); Am. Fed’n of Gov’t Employees v. Skinner, 885 F.2d 884, 894 (D.C.Cir.1989).
First, there is no evidence that would demonstrate that the officers were unable to see the rear of Booker’s car, and specifically the rear tag, at any point during the entire pursuit. To the contrary, the police followed the car for blocks, turned where the car turned, and, according to the officer’s testimony, “pulled directly behind it.” Tr. Nov. 18, 2003 at 8 (emphasis added). This court’s reliance on a MapQuest image that it retrieved from the internet, see Op. at 718-19 & nn. 2, 3, does not fill the evidentiary gap; the image shows roads running north and south and the curved road Booker’s car traveled before it was parked, but it does not show that during the pursuit the officers were unable to see the rear tag on Booker’s car. The district court made no findings that would support the court’s inference that the officers “were not close enough” to see the rear tag on Booker’s vehicle, id. at 724. At best, the district court hypothesized, on the basis of less “complicated [facts],” that the officers “might not have known [there was a dealer’s tag] by following the car at some distance for a couple of blocks.” Tr. Nov. 18, 2003 at 72.
Second, even assuming that the officer’s testimony about the distance that Booker’s car traveled could be interpreted to mean that Booker had already traveled three to four blocks by the time the officers made a U-turn to follow the car — as opposed to when the officers caught up to it after it was parked — this evidence does not support an inference that the officers were three to four blocks behind Booker’s vehicle during the entire pursuit. See Op. at 724 (citing Tr. Nov. 18, 2003 at 8). Rather, the district court’s finding understood the officer’s testimony to be that Booker’s vehicle was parked three to four blocks away from the place where the officers initially sighted it — not that the cars were separated by three to four blocks during the pursuit. See Mem. Op. at 2. Indeed, one of the officers testified that the police car and Booker’s car were closer during the pursuit: “[We][p]ulled directly behind [Booker’s vehicle]” to indicate ... that it should stop. Tr. Nov. 18, 2003 at 8 (emphasis added). When asked whether he “s[aw] [Booker] make any movements in the car” “[d]uring the three or four blocks that [Booker] traveled,” the officer did not testify that he was not close enough to see any movements, much less to see the rear tag on the car, but instead answered, “No, I did not.” Id. at 16. If the officers were close enough at any point during the pursuit to see Booker’s movements inside the car, then they were close enough to see whether there was a tag on the rear of his car.
Third, the fact that the officers had an objectively reasonable basis for investigating upon initially seeing the temporary tag in the front windshield is insufficient to show their suspicion continued to be reasonable forever. See Op. at 724-25. The court relies on the district court’s finding that “after making a U-turn and pulling up next to [Booker’s car], the officers’ attention was distracted by the immediate departures of [Booker] and [the] passenger,” so “there [wa]s no basis to fault the officers for having failed to study the rear tag and realize that it might have been a dealer tag.” Mem. Op. at 9-10. But there was no testimony that the officers were *729 distracted; as the officer explained, when they caught up with the car, Booker had exited the car only in the sense that his feet were on the ground and the passenger did not begin to run until after the officer had stepped out of the car, identified himself, and ordered the men to stop. Additionally, upon approaching Booker’s parked car from the rear, the officers had to notice only that there was a rear tag— they did not need to ascertain what type of tag it was, which would have required closer examination — because having seen a temporary tag in the front windshield, seeing a tag on the rear of the car would dispel the officers’ initially reasonable suspicion that Booker was violating District of Columbia law. From the evidence that the officers followed the car for several.blocks and then approached the parked car from behind and stopped, it is inconceivable that the officers from the auto theft unit would not have noticed the rear tag.
As Booker argued to the district court, and that court ignored, and as he argues on appeal, “there is no evidence in the record that supports the district court’s speculation about the officers’ actions,” as neither of the two officers who testified claimed that they or the third officer were “ ‘distracted’ as they pulled up behind car.” Appellant’s Br. at 20; see Tr. Nov. 18, 2003 at 64. “Neither [did the officers] testifiy] that they were unable to determine that the rear tag was also a dealer’s tag,” id., much less that they were unable to see a rear tag at all. Because the evidence does not support the conclusion that a reasonable officer, particularly one trained to look for stolen cars and fraudulent tags, would not have glanced at the rear of Booker’s car or not had an opportunity to do so at any point during the pursuit to determine whether there was a rear tag, the district court erred in denying Booker’s motion to suppress the evidence found in the car. Accordingly, I respectfully dissent.