**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ricky J. MITCHELL and Peter L. Johnson, Defendants–Appellants.**

Nos. 93–3404, 93–3466.

United States Court of Appeals, Seventh Circuit.

Argued June 2, 1995.

Decided Sept. 6, 1995.

Rehearing Denied in No. 93–3466 Oct. 31, 1995.

Alan N. Grossman, Asst. U.S. Atty. (argued), Jon King, Office of U.S. Attorney, Criminal Division, Chicago, IL, Barry Rand

Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Division, Chicago, IL, for U.S. in No. 93–3404.

Gerald J. Collins (argued), Chicago, IL, for Ricky J. Mitchell.

Jon King (argued), Office of U.S. Attorney, Criminal Division, Chicago, IL, Barry Rand Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Division, Chicago, IL, for U.S. in No. 93–3466.

Edward X. Clinton (argued), Mayer, Brown & Platt, Chicago, IL, for Peter L. Johnson.

Before CUMMINGS, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

The defendants were tried together and convicted of charges stemming from a Chicago police raid of an apartment suspected of being the center of a drug ring. Ricky Mitchell was convicted of possession of counterfeit Federal Reserve Notes and of possession with intent to distribute a mixture containing heroin. He was sentenced to fifty-one months imprisonment, and he appeals his sentence only. Peter Johnson was convicted of possession of cocaine and marijuana with intent to distribute and of carrying a firearm during a drug trafficking crime. Johnson appeals his conviction.

## I. Background Facts

On October 19, 1991, Chicago police officers executed a search warrant on an apartment located at 4344 South Princeton. The officers were looking for evidence of drug trafficking and for a man named Charles "Scotty C." Harris (Scotty C.). After forcing open the door and entering the apartment, the officers immediately saw defendant Mitchell standing in the living room. Officer Glen Lewellen ordered Mitchell to the floor, and, when Mitchell complied, Lewellen stepped over him and ran toward the rear of the apartment, where he saw defendant Johnson through an open bedroom door. Johnson was standing near a window holding a briefcase in his right hand. Lewellen saw a gun in Johnson's waistband and yelled "Gun! Gun!" to alert the other officers of the

danger. Lewellen ordered Johnson to drop the briefcase and to hit the floor. Johnson complied, and Lewellen removed from Johnson's waistband a loaded .380 Titan semi-automatic pistol.

After handcuffing Johnson, Lewellen picked up the open briefcase. He looked inside and saw what appeared to be narcotics. He then took both Johnson and the briefcase out to the living room, where he conducted a full search of both. Inside the briefcase, Lewellen found quantities of cocaine, marijuana, and heroin and several clear plastic bags.

Meanwhile, Officer Getman searched Mitchell, finding a .25 caliber semi-automatic handgun. Lewellen also searched Mitchell and found quantities of cocaine and heroin in his right pants pocket. In Mitchell's left pants pocket, Lewellen found $909.00 in United States currency and $320.00 in counterfeit bills.

After arresting and searching Mitchell and Johnson, the officers completed their search of the apartment. In the same bedroom where Lewellen had cornered Johnson, police recovered an electronic digital scale.

## II. Mitchell's Sentence

Mitchell's sole claim on appeal is that the district court erred when it increased his base offense level by two for obstruction of justice after finding that he perjured himself during his testimony.

The United States Sentencing Guidelines provide: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1. The Guidelines Commentary notes that this provision is not to be applied to a constitutional right, such as a denial of guilt, unless that denial is under oath and constitutes perjury. *Id.*, Application Note 1, 3(b).

■ In order to apply the obstruction increase, the district court must find on the record that the defendant willfully obstructed or attempted to obstruct justice and that the

obstruction was material. *United States v. Yusufu*, 63 F.3d 505 (7th Cir.1995). To find perjury, the court may not simply rely on a jury's verdict that necessarily rejects the defendant's testimony; rather, the court must "make a specific, independent finding that a defendant was less than truthful when he testified." *United States v. Hofer*, 995 F.2d 746, 750 (7th Cir.1993). We review the district court's factual finding that the defendant obstructed justice through perjury for clear error. *United States v. Carter*, 999 F.2d 182, 188 (7th Cir.1993).

During trial, Mitchell testified that he was part of a drug ring led by Scotty C. He stated that his duties included picking up narcotics and delivering them to the apartment. He also testified that, in late September and October of 1991, he spoke with Michael Domer of the Cook County Sheriff's office about becoming an informant against Scotty C. Mitchell told the jury that he and Domer specifically discussed a counterfeiting scheme run by Scotty C. and that Domer instructed him to bring him a few of the counterfeit bills to Domer for examination. It was in accordance with Domer's instructions, Mitchell testified, that he came to possess the sixteen counterfeit $20 bills at the time of his arrest on October 19, 1991.

The district court concluded that this story was a lie and that Mitchell had committed perjury. The court stated on the record that, after making an independent analysis of Mitchell's story (that is, independent of the jury's verdict that Mitchell was guilty), it found that Mitchell's testimony did not square with the facts. The district court found quite damaging to Mitchell's position the fact that the counterfeit money was mixed in with the legitimate money and that Mitchell carried so many bills. If indeed Mitchell were providing a sample to the police, the court noted, he would need only a few bills, not sixteen. The court concluded that, contrary to Mitchell's testimony, the counterfeit money was to be used in a drug transaction.

■ Mitchell argues that the district court's finding was erroneous for two reasons. First, Mitchell contends his statement about his intended use of the counterfeit

money was not material. Mitchell does not bother to explain, however, how his perjury could possibly not be material. Application Note 5 to Guidelines § 3C1.1 states that evidence is material when, if believed, it would tend to affect the issue under determination. U.S.S.G. § 3C1.1 App.Note 5. Mitchell told the jury that he possessed the counterfeit bills only because he intended to turn them over to the police to inculpate Scotty C.

The counterfeiting statute under which Mitchell was convicted required the government to prove that Mitchell had a fraudulent intent in possessing the bills. *See* 18 U.S.C. § 472. Had the jury believed Mitchell's stated intent, it would have acquitted him of the counterfeiting charge. An acquittal would have, of course, been based on Mitchell's false testimony about his intent. It is the very essence of materiality when a defendant's lie would exculpate him from the crime for which he is charged.

■ Second, Mitchell argues that the district court judge's findings were in error. The district court found that the counterfeit currency was not segregated from Mitchell's legitimate currency, a fact tending to establish Mitchell's intent to use the counterfeit bills for purposes unrelated to his role as an informant.

Mitchell says this finding is based on an inaccurate recollection of officer Lewellen's trial testimony. Mitchell notes that the district court judge initially couldn't remember why it seemed that the amount and arrangement of the bills did not coincide with Mitchell's explanation that he was holding the bills for police. Eventually, the judge stated that he remembered Lewellen's testimony about counterfeit five dollar bills being commingled with legitimate currency. But, as Mitchell points out, there were no counterfeit five dollar bills. Lewellen had testified that he found counterfeit twenties.

Moreover, Lewellen had stated that the counterfeit money was "mixed in" (as opposed to commingled) with the legitimate money. Mitchell argues that the district court clearly erred in recalling the specifics of Lewellen's testimony and that "mixed in"

does not mean the same thing as commingled. What Lewellen may have meant, Mitchell proposes, was that all the bills were in the same pocket. Lewellen's testimony does not preclude the possibility that the counterfeit bills were all together on top of the legitimate bills. That would be sufficient segregation, Mitchell argues, to defeat the district court's finding that Mitchell intended the bills for personal use.

We disagree. While the Guidelines state that the district court should interpret the defendant's alleged perjurious statements in the light most favorable to the defendant when considering an obstruction increase, they do not say the court should interpret the statements of others in the same way. U.S.S.G. § 3C1.1 App.Note 1. A reasonable inference to make from Lewellen's testimony is that the money was commingled, with a few counterfeit notes, then a few legitimate notes, then a few more counterfeit notes, and so on.

Moreover, even if we were to accept Mitchell's position that the counterfeit notes were kept together, that would not lead us to conclude that the district court was wrong. The number of bills found on Mitchell indicates that Mitchell lied under oath. And Officer Domer, whom Mitchell was supposed to contact in order to set up Scotty C. and to whom Mitchell said he was going to give the counterfeit notes, testified that Mitchell had been leery of becoming an undercover operative.

In fact, though he had agreed to produce some evidence against Scotty C. in the past, Mitchell had never produced any counterfeit notes or informed police when Scotty C. might be arrested with drugs on him. Mitchell testified that he had unsuccessfully paged Domer that day, both before and after he was arrested, to tell him about the counterfeit currency. But the district court apparently found it implausible that Mitchell would undertake such a sting against Scotty C. without first successfully notifying the police. We do not believe that the district court committed clear error in finding that Mitchell obstructed justice.

### III. Johnson's Conviction

#### A. *Johnson's Expectation of Privacy at the Princeton Avenue Apartment*

■ Johnson moved before trial to suppress the evidence police found during the raid of the Princeton Avenue apartment as the fruit of an illegal search. The district court denied the motion without a hearing, concluding that Johnson had asserted no facts that, if proven, would give rise to Johnson's legitimate expectation of privacy in the apartment. Johnson appeals, asking us to reverse and remand for a hearing on the matter. We review the district court's determination for clear error. *United States v. McAllister,* 18 F.3d 1412, 1416 (7th Cir.1994).

■ In order to object to the search of the apartment, Johnson must allege facts that would show that he had exhibited a subjective expectation of privacy in the place to be searched and that such an expectation was justifiable under the circumstances. *United States v. Duprey,* 895 F.2d 303, 309 (7th Cir.1989), *cert. denied,* 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990). We have recognized that several factors are relevant to these issues, including: 1) whether the defendant had a possessory interest in the place searched; 2) whether he had a right to exclude others from the place searched; 3) whether he exhibited a subjective expectation that the place searched remain free from governmental invasion; 4) whether he took normal precautions to protect his privacy; and 5) whether he was on the premises legitimately. *Id.*

■ In his motion to suppress and his supporting memorandum Johnson alleged that he and Mitchell were inside the apartment when the police showed up. However, he stated no other facts that would support a finding that he had a justifiable subjective expectation of privacy in the apartment.

On appeal, Johnson asks us to infer other supporting facts from evidence presented at trial. For example, Mitchell testified that Johnson arrived at the apartment first and had to open the door and the burglar bars to allow Mitchell to enter. Also, the two apparently locked the door to the apartment be-

cause, as Officer Lewellen testified, the police had to force open the door to gain entry.

Johnson asserts that it is "apparent" that he had permission to be there, and that he "clearly had a key to the apartment and the right to exclude others." How these facts have become apparent and clear eludes us, for Johnson points to no allegation, affidavit, or testimony before the district court asserting that he had either a key or permission to be in the apartment.

Moreover, the locked door does not establish any possessory interest, a right to exclude others, or his legitimate presence on the property. A reasonable inference from these facts is that the apartment was unlocked when Johnson arrived and that it was owned and rented by other people who may not have known he was there. Johnson has not alleged facts that, if proven, would establish his claim that he had a justifiable expectation of privacy. Therefore, he is not entitled to a hearing on the matter.

In light of the deficiency of Johnson's assertion of a justifiable expectation of privacy, we decline to review Johnson's claims that the search warrant was constitutionally deficient and that the police violated his statutory and constitutional rights by failing to knock and announce themselves before entering the apartment.

### B. Lewellen's Search of Johnson's Briefcase

Officer Lewellen testified that when he initially seized Johnson and handcuffed him, he noticed that Johnson's unclosed briefcase had fallen to the floor. He looked inside and saw what appeared to be narcotics. Officer Lewellen stated that after escorting Johnson to the living room of the apartment and searching him, he "opened the briefcase and examined the items that were inside the briefcase." Inside the briefcase Lewellen found quantities of cocaine, marijuana, and heroin.

Johnson claims that the district court should not have allowed Lewellen to testify as to what he saw in the briefcase because the search of the briefcase was illegal. At the time Lewellen searched the briefcase, Johnson claims, there was no danger that the contents of the briefcase could be destroyed or used to harm police officers because both Johnson and Mitchell were handcuffed and without access to the briefcase. Accordingly, Johnson argues that any search of the briefcase without a warrant specifically authorizing such a search was illegal.

One exception to the Fourth Amendment's warrant requirement is that, incident to a lawful arrest, police may search an arrestee and the area immediately surrounding him. *United States v. Veras,* 51 F.3d 1365, 1371 (7th Cir.1995). Such a search must be contemporaneous with arrest, conducted to prevent the seizure of a weapon or the destruction of evidence, and limited to an area within the arrestee's control. *Id.* Here, while in the act of arresting Johnson,[1] Lewellen noticed what looked like drugs in the open briefcase. Immediately after securing Johnson, Lewellen searched the briefcase more thoroughly.

The timing of the search was contemporaneous with the arrest. Additionally, there was a reasonable basis for Lewellen to search the briefcase, which he had observed Johnson about to throw out of the window immediately before arresting him, in order to preserve evidence that might be inside and to check it for more weapons.

Lewellen had arrested Johnson after seeing a gun in Johnson's waistband, indicating that these suspects were not afraid of using guns. Moreover, the officers obtained the warrant they used to search the apartment in order to search Scotty C. as well, and it would have been reasonable for the officers to fear that he might come through the door at any moment and either grab for the briefcase or create an opportunity for either Johnson or Mitchell to grab for the briefcase. Finally, the briefcase had been in Johnson's control when he was arrested and was lying near him when Lewellen picked it up. We do not believe that Johnson's handcuffing destroyed Lewellen's justification for searching the briefcase. *See United States v. Fleming,* 677 F.2d 602, 606–07 (7th Cir.1982)

---

1. Johnson does not argue that his arrest was      unlawful.

(finding valid a search of defendants' bags incident to their arrest where the defendants had been seen carrying their bags into a house, had dropped the bags when lawfully arrested in the house, and the bags had been searched after police had arrested the defendants and taken them outside to the curb).

### C. Government's Use of Heroin as Evidence

■ Johnson claims that the district court erred in allowing the government to introduce evidence that Johnson's bag contained heroin because the government did not charge Johnson with possession of heroin with intent to distribute. Johnson did not object at trial to the introduction of the heroin, so we review for plain error only. We will reverse only if Johnson shows that the heroin testimony was plain error affecting his substantial rights and "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, — U.S. —, ———, 113 S.Ct. 1770, 1778–79, 123 L.Ed.2d 508 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

■ Evidence of bad acts other than those with which the defendant is charged is generally inadmissible to show the defendant's propensity to engage in the crime charged. FED.R.EVID. 404(b). However, even if the evidence of Johnson's possession of heroin should not have been given to the jury, we do not believe that Johnson has shown that it affected his substantive rights.

Other evidence in the case, such as his possession of the gun, his possession of the briefcase containing the crack cocaine and marijuana in distribution quantities (as opposed to the heroin, which, as Johnson himself argues, was in a quantity likely intended for consumption, not distribution), and his attempt to throw the briefcase out of the window before Officer Lewellen arrested him all overwhelmingly established Johnson's guilt beyond a reasonable doubt. We do not believe that the evidence of heroin, even assuming it was wrongly admitted into evidence, seriously affected the fairness, integrity, or public reputation of the proceedings.

Finally, we do not believe that the government's use of the heroin as evidence and subsequent mention of the heroin in closing argument constructively amended the indictment against Johnson. Such an amendment occurs where the trial evidence broadens the possible basis for conviction from that which appeared in the indictment. *United States v. McNeese*, 901 F.2d 585, 603 (7th Cir.1990). As it was not preserved below, we review this claim for plain error.

As discussed above, Officer Lewellen testified that he found heroin inside Johnson's briefcase. At closing argument, the government catalogued in detail the amounts of crack and marijuana found on Johnson. The prosecutor also stated that Johnson "had a smorgasbord of other drugs with him. He had some heroin, he had some cocaine. He was a walking drug store." Johnson argues that this statement led jurors to believe that Johnson's possession of heroin was a separate crime for which they could convict him. We do not find this argument persuasive.

This case is not like, contrary to Johnson's argument, *United States v. Leichtnam*, 948 F.2d 370 (7th Cir.1991). There, we reversed a conviction because the indictment charged the defendant with using a particular Mossberg rifle in conjunction with a drug trafficking crime, but, following a trial at which two firearms other than the Mossberg were introduced into evidence, the court instructed the jury that it had only to find that the defendant used or carried any firearm to convict him. The specificity of the indictment permitted a conviction in that case only if the jury found that the defendant carried or used the Mossberg. We concluded that there was no way of knowing if the jury convicted the defendant because it found he used or carried the Mossberg or because it found he used or carried one of the other guns. *Id.* at 380–81.

Here, the court first instructed the jury as to the indictment against Johnson:

The defendant Peter L. Johnson is charged with the crimes of possession of crack cocaine with the intent to distribute, possession of marijuana with intent to distribute, and using and carrying a firearm

during and in relation to a drug trafficking crime.

Later, the court instructed the jury as to what it had to find in order to convict Johnson:

Turning now to the remaining counts of the indictment. To sustain the charge that a defendant possessed an illegal drug with intent to distribute it, as alleged in Counts Three, Five, and Six of the indictment, the Government must prove the following propositions: First, that the defendant you are considering knowingly possessed the drug charged at the time and place alleged; second, that at the time the defendant you are considering possessed the drug, he had—I will start over. Second, that at the time the defendant you are considering possessed the drug, he had the intent to distribute it.

We do not believe that the instructions were ambiguous. That is, a reasonable jury would have believed that it could convict Johnson only if it found that he possessed with the intent to distribute marijuana and crack cocaine, and that it could not convict if it merely found that he possessed heroin. Because the court unambiguously instructed the jury that it had to find Johnson possessed the drug charged in the indictment, the introduction of the heroin evidence did not afford the jury a broader basis on which to convict the defendant than the indictment allowed.

We find Johnson's remaining claims to be without merit, so we do not discuss them.

### IV. Conclusion

The sentence of Ricky J. Mitchell is AF-FIRMED, and the conviction of Peter L. Johnson is AFFIRMED.