COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judges Elder and Annunziata
Argued at Chesapeake, Virginia


JOHNNY B. SHARPE, S/K/A
  JOHNNY BERNARD SHARPE
                                                        OPINION BY
v.        Record No. 2767-03-1              JUDGE LARRY G. ELDER
                                                   NOVEMBER 30, 2004
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                        Thomas S. Shadrick, Judge

          Daniel Paul Goode (Tabitha B. Anderson, Assistant Public Defender;
          Office of the Public Defender, on brief), for appellant.

          Richard B. Smith, Senior Assistant Attorney General (Jerry W.
          Kilgore, Attorney General, on brief), for appellee.


          Johnny B. Sharpe (appellant) appeals from his bench trial conviction for possession of

cocaine with intent to distribute in violation of Code § 18.2-248.  On appeal, he contends the trial

court erroneously concluded the warrantless, "no-knock" entry of the motel room in which he

was sleeping did not violate the Fourth Amendment.  We hold appellant failed to prove he had a

reasonable expectation of privacy in the motel room and, thus, that he has no legal basis for

challenging the search.  Accordingly, we affirm the conviction.

                                              I.

                                        BACKGROUND

          On November 21, 2002, Virginia Beach Police Detectives Brent Calhoun, J.J. Kozlowski

and Mike Felts conducted an investigation of a motel room suspected to be involved in narcotics

activity.  They received information from an informant who observed people "coming and

going" from a particular room at a particular motel and "thought it merited [the detectives']

checking it out." The detectives planned what they "call[ed] a knock and talk," in which they "approach a room[,] knock on the door and speak to the occupants."

The detectives arrived at the motel at around 8:40 a.m. and checked the registration for the room at issue. They then proceeded to the room, conducted brief surveillance, and knocked on the door at about 8:55 a.m. When an individual looked through the curtains, they identified themselves as police officers and asked if he would mind opening the door to speak with them. The individual, who later identified himself as Brandon Jones, opened the door and stepped out, and "[t]he door closed behind him." The curtains to the room remained closed. Upon learning Jones's name and obtaining identification from him, the detectives ascertained that he was not listed as a registered occupant of the room.

The officers inquired whether Jones "had smoked any marijuana in the room," and Jones responded "that he had the night before." When asked if any marijuana was in the room, Jones said "there was a small amount inside an ashtray." The officers then inquired whether there was any cocaine in the room, and Jones said "his roommate," later determined to be appellant, had "[b]etween an eight ball and a quarter" of crack cocaine in a plastic bag in the room.

At the detectives' request, Jones gave them permission to search him. During the course of the search, they found two motel room keys. The officers intended to enter the room to "freeze the scene and find out if anyone else was in the room other than the person [Jones had] indicated." They tried the keys in the door, but "[n]either . . . worked." Detective Felts then obtained a key to the room "from a hotel employee." When Felts returned with the key, they entered the room. The detectives did not ask Jones for permission to enter the room and did not knock again prior to actually entering the room. Jones was cooperative while speaking to police and engaged in no efforts to call out to the remaining occupant of the room or to otherwise alert him to the presence of the police outside the motel room.

- 2 -

Upon entering the room, the detectives found appellant "laying down" on the bed closest to the door. Detective Calhoun did not "know if [appellant] was asleep or not," but testified he "did have to say, Hey, wake up." Detective Kozlowski moved far enough into the room to determine that no one was in the bathroom or anywhere else in the room.

Detective Calhoun then asked appellant who he was, and appellant identified himself as Johnny Sharpe. Detective Calhoun knew no one by that name was a registered occupant of the room. Detective Calhoun asked appellant for identification, and appellant responded that he had some in the jeans lying on the floor next to the bed. Appellant gave Detective Calhoun permission to retrieve his identification and to search the jeans. Inside appellant's jeans, Detective Calhoun found "twenty-four black seamed baggies containing suspected cocaine" and $280 in currency. In plain view on the nightstand next to the bed in which appellant had been found "was what seemed to be crack cocaine equaling the size that Mr. Jones had indicated was in the room."

Detective Calhoun then asked appellant for permission to search the room. When appellant "indicated that [the detectives] could not search anymore," Detective Calhoun "told him that the scene was now frozen." Calhoun then left the scene and returned with a search warrant at about 12:06 p.m. After obtaining the warrant, Calhoun searched the room. In addition to the suspected cocaine found in plain view during the initial entry of the room, Detective Calhoun recovered a Colt 45 handgun, approximately twenty-four grams of marijuana, and three Ecstasy pills.

Appellant was arrested and charged with the instant offense. Prior to trial, he moved to suppress the evidence as the product of an unreasonable search. He argued, *inter alia*, that the detectives should have knocked and announced prior to entering the room because "[t]hey never stated that they heard anybody running around inside, toilets flushing, any noise," and Jones did

- 3 -

not report that any weapons were in the room. Thus, appellant argued, the detectives lacked the exigent circumstances necessary for a warrantless, no-knock entry.

The Commonwealth asserted that appellant failed to establish standing to contest the search of the room because he was not a registered occupant. The Commonwealth also argued that the detectives did knock and announce their presence before they engaged in the conversation with Jones and that these actions were sufficient to constitute knocking for their subsequent entry. It appeared to concede that the detectives lacked exigent circumstances.

The trial court denied the motion, ruling as follows:

> They went and secured the scene. They went and got a search warrant. They asked permission to get the ID and to search the jeans once they were in the room. There was no evidence as to where they went and got the key. One could assume they went to the desk and got the key. One could assume that the defense -- that they -- I don't know where they got the key. There's no showing that it was -- that the second entrance was not with consent; and the first entrance was with consent.[1] The police did not go beyond what they should have done.
>
> As far as the standing question, it's a good question because there was no evidence how long [appellant] was in the room, whether he belonged in the room, whether he was splitting the room, whether he'd gotten there five minutes before and was just visiting in the room. There's probably enough to deny the motion to suppress just on the standing issue; but with everything else, there's more than enough to deny the motion.

(Footnote added).

After the trial court denied the motion to suppress, appellant entered a conditional guilty plea and noted his appeal of the denial of the motion to suppress.

---

[1] In fact, the evidence shows the officer obtained a key from a motel employee. Further, no evidence indicates the entry (there was one entry rather than two, as the trial court erroneously stated) was with consent, and the Commonwealth does not allege consent. Thus, these statements are error. However, appellant does not challenge them on appeal, and we need not resolve them because we conclude appellant failed to establish a legal basis for contesting the entry.

II.

ANALYSIS

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to the evidence all reasonable inferences deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc), but we review *de novo* the trial court's application of defined legal standards such as whether a defendant had a reasonable expectation of privacy sufficient to permit him to raise a Fourth Amendment challenge to a search, United States v. Gordon, 168 F.3d 1222, 1225 (10th Cir. 1999); see also Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996) (holding appellate court reviews *de novo* application of defined legal standards such as reasonable suspicion and probable cause to facts of case).

Appellant contends he had a reasonable expectation of privacy in the motel room searched and that the detectives violated his Fourth Amendment rights by entering to secure the premises without first knocking and announcing their intent to do so. The Commonwealth contends appellant lacked a reasonable expectation of privacy in the motel room. It also argues that the detectives knocked when they first arrived at the room and spoke with Brandon Jones and that they were not required to knock and announce again before entering the room. Finally, it contends that the cocaine is admissible under an exception to the exclusionary rule because the detectives would inevitably have discovered the cocaine pursuant to execution of a valid search warrant.

We hold, on the facts of this case, that appellant failed to prove he had a reasonable expectation of privacy in the motel room, which was a prerequisite to his ability to challenge the entry of the motel room.

At a hearing on a defendant's motion to suppress evidence allegedly obtained in violation of the Fourth Amendment, the defendant has the burden of proving he had a reasonable expectation of privacy in the place searched.[2] Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987) (citing Rakas v. Illinois, 439 U.S. 128, 131 n.1, 99 S. Ct. 421, 424 n.1, 58 L.Ed.2d 387 (1978)).

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable. . . . [T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 586-90, 100 S. Ct. 1371, 1380-82, 63 L. Ed. 2d 639 (1980). "The [F]ourth [A]mendment rights of a guest in a motel room are equivalent to those of the rightful occupant of a house," the warrantless entry of which is presumed unreasonable. Servis v. Commonwealth, 6 Va. App. 507, 514, 371 S.E.2d 156, 159 (1988).

The United States Supreme Court has held that an overnight guest in a house has the same sort of expectation of privacy that the Fourth Amendment protects, Minnesota v. Olson, 495 U.S. 91, 98-100, 110 S. Ct. 1684, 1689-90, 109 L. Ed. 2d 85 (1990), whereas "one who is merely present with the consent of the householder [does] not," Minnesota v. Carter, 525 U.S.

---

[2] Although many courts "characterize this as a question of 'standing,' the Supreme Court expressly rejected a standing analysis in Rakas v. Illinois, 439 U.S. 128, 143, 99 S. Ct. 421, 430, 58 L. Ed. 2d 387 (1978)." Gordon, 168 F.3d at 1225 n.2. The Court has held that, "[i]n order to determine whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" Minnesota v. Carter, 525 U.S. 83, 88, 119 S. Ct. 469, 472, 142 L. Ed. 2d 373 (1998) (quoting Rakas, 439 U.S. at 140, 99 S. Ct. at 428).

83, 90, 119 S. Ct. 469, 473, 142 L. Ed. 2d 373 (1998).  It has also held that one who is present on residential premises only briefly and for a strictly commercial rather than personal purpose cannot demonstrate a legitimate expectation of privacy in those premises.  See id.

Whether the privacy interest for personal overnight guests recognized in Olson extends to the overnight guests of motel registrants, especially those guests of whose presence motel staff is unaware, has not been resolved by the United States Supreme Court or any Virginia appellate court.  Other courts considering the issue have held that motel registrants and overnight guests of those registrants may have a reasonable expectation of privacy in the motel room.  See, e.g., Gordon, 168 F.3d at 1226; Wilson v. State, 98 S.W.3d 265, 269-70 (Tex. Ct. App. 2002).  Those courts have uniformly "required a defendant to demonstrate that he was the registered occupant of the room or that he was sharing it with the person to whom the room was registered."[3] Gordon, 168 F.3d at 1226; see also Armour v. State, 762 N.E.2d 208, 213-14 (Ind. Ct. App. 2002); State v. Gonzalez, 85 P.3d 711, 714 (Kan. Ct. App. 2004).

> Mere physical possession or control of property is not sufficient to establish [a basis] to object to a search of that property.  Although a defendant need not come forward with documentation establishing legal possession of the area searched, he must at least demonstrate, in the case of a motel room, that he was the invited guest of the renter of the premises.

United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995) (citations omitted).

We assume without deciding that an overnight guest of a motel registrant may assert a privacy interest in the motel room he is occupying.  Here, however, no evidence beyond appellant's presence on the premises tended to indicate that he was in the motel room with the consent of the room's registered occupant.  The detectives, who checked the room's registration

---

[3] We need not address the impact of motel policy regarding whether registered guests might legitimately allow unregistered guests to be present on the premises overnight.  Nothing in this record establishes the motel at issue here restricted the presence of unregistered overnight guests.  See Wilson, 98 S.W.3d at 269 n.1.

before initiating the consensual encounter, testified that neither appellant nor Brandon Jones, the person who initially responded to the detectives' knocking, was a registered occupant of the room. Further, no evidence demonstrated that either appellant or Jones possessed a key to the room, see Gordon, 168 F.3d at 1226-27 (holding that even possession of key to room insufficient to establish reasonable expectation of privacy because it shows "mere physical possession or control"), and neither claimed any connection to the registered occupant, either at the time of the encounter or at the hearing on the motion to suppress, see United States v. Mitchell, 64 F.3d 1105, 1109-10 (7th Cir. 1995) (holding fact that apartment's doors were locked "does not establish any possessory interest, . . . right to exclude others or . . . legitimate presence on the property [because] [a] reasonable inference from these facts is that the apartment was unlocked when [defendant] arrived and that [the apartment] was owned and rented by other people who may not have known [defendant] was there"); Armour, 762 N.E.2d at 214 (holding "no evidence in the record . . . suggest[s] that [registered occupant] gave [defendant] permission to be in the room[] and . . . that his mere presence there, does not, without more, [imply] such permission"). The fact that Jones referred to appellant as "his roommate" and that appellant appeared to have gone to sleep in one of the room's beds after removing his pants and placing them on the floor indicated, at most, that appellant may have been present in the room for some time. It does not indicate that appellant or Jones was an overnight guest who had permission from the registered occupant to be present. Thus, the record supported the trial court's statement that "there was no evidence how long [appellant] was in the room, whether he belonged in the room, whether he was splitting the room, whether he'd gotten there five minutes before and was just visiting in the room."

III.

Because appellant failed to establish a legitimate expectation of privacy in the motel

room, the trial court's denial of his motion to suppress was not erroneous.  Thus, we affirm

appellant's conviction.

<u>Affirmed.</u>