# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Commonwealth of Virginia

v.

Brian Wesley Faulcon

May 20, 2016

Case No. (Criminal) CR12-819

By Judge John W. Brown

This matter is before the Court on the defendant's motion to suppress the seizure of his person from a townhouse located at 1009 River Birch Court, Chesapeake, Virginia, on the basis that the responding officers' entry into the curtilage and residence, and corresponding seizure of the defendant, took place "without reasonable or probable cause or justification." Following a thorough review of the arguments of counsel in court and on brief, for the reasons that follow, the Court denies the defendant's motion to suppress.

## I. *Factual Background*

On January 23, 2012, at approximately 8:38 P.M., Officer Jim Duncan, a canine handler with the Chesapeake Police Department, received a call for a robbery that occurred at 1115 Merchant's Court, in the parking lot of a nearby apartment complex, about five minutes prior. En route, at around 8:40 P.M., he received a radio description of two suspects, both black males, one 5' 9" to 6' in height, wearing a dark colored hooded sweatshirt, and the other wearing a white hooded sweatshirt. Both suspects had fled the scene on foot, running between two apartment buildings. A second radio transmission stated that two individuals who matched the descriptions were observed in front of an Acura by the reporting officer, Sergeant Smith, and moved quickly into a residence on River Birch Court. At 8:47 P.M., Officer Duncan arrived at 1009 River Birch Court, which was less than ½ mile away from the robbery scene. At 1009 River Birch Court, the officer observed a semiautomatic handgun and separate thirty-round magazine lying in plain

view on the floor of a white Acura parked in front of the house. This is the car in front of which the defendants were observed by the reporting officer. Officer Duncan and Sergeant Smith, in uniform and displaying badges of authority, went to the front door of the townhouse, 1009 River Birch Court, knocked, and announced their presence as Chesapeake Police Officers at around 8:50 P.M. A minute later, an Asian male, who did not fit the suspects' description, the tenant of the house, responded and informed the officers that there were two other individuals inside, "Brandon and his friend". After the officers made additional announcements asking the occupants to come out, another individual, Brandon Smith, emerged. Approximately a minute-and-a-half to two minutes later, after Officer Duncan issued canine warnings, "Chesapeake Police, anyone inside the residence at 1009 River Birch Court, come outside. We have a K-9. The dog will be released. Come out and announce your presence or you will be bit." Faulcon exited the house. The defendant and Brandon Smith were placed in investigative detention at this time.

The robbery victim, who had been summoned, arrived at the scene "almost immediately" thereafter and provided a positive identification of the defendant as one of the robbers. Officer Duncan left the scene and obtained a search warrant for the house at 10:13 P.M. that night, based in part upon the victim's positive identification of Faulcon.

Additionally, Officer Brenden Gilman, also a canine handler with the Chesapeake Police Department, responded to 1115 Merchant's Court with his canine partner, Uno, at approximately 8:39 P.M. Officer Gilman received information that the two suspects fled between 1115 and 1121 Merchant's Court, and "cast" Uno into that area. The canine tracked scent from the scene, between two buildings where the robbers fled, down a fence line, eventually following the scent to its end at the back door of a townhouse, 1009 River Birch Court. The entire track was estimated to be ¼ mile in length. Officer Duncan testified that Officer Gilman arrived "simultaneously" to the occupants exiting the townhouse.

Officer Duncan, when asked what he would have done had the individuals not emerged from the house, testified that he would have "locked it down" and "set up a perimeter" to ensure that no one escaped and the remaining officers were safe, and gone to obtain a search warrant. The officer did in fact leave to obtain a search warrant after the defendant exited the townhouse. The warrant was issued at 10:13 P.M., and sought, in part, the clothes worn by the suspects by the time of the robbery. After the officers administered *Miranda* warnings, at 11:50 P.M., the defendant informed Officer Duncan that the white Acura outside 1009 River Birch Court and the gun inside belonged to him.

## II. *Analysis*

"At a hearing on a defendant's motion to suppress evidence allegedly obtained in violation of the Fourth Amendment, the defendant has the burden of proving he had a reasonable expectation of privacy in the place searched." *Sharpe v. Commonwealth*, 44 Va. App. 448, 455 (2004); *see, e.g., Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

In the instant case, there is no evidence that the defendant had a reasonable expectation of privacy in the residence where he was found. *See, e.g., Barnes v. Commonwealth*, 234 Va. 130, 135 (1987) ("The Supreme Court has expressly held that the mere right to be present is insufficient to confer standing to invoke the Fourth Amendment protections to which a dwelling is entitled."); *Young v. Commonwealth*, 2013 Va. App. LEXIS 202, at *13 (2013) (unpublished opinion) (holding that defendant failed to present sufficient evidence that he was an overnight guest; therefore, he was without standing to challenge a search of the hotel room where he was found). There was no evidence that Faulcon was anything other than a mere non-overnight guest, with no right to exclude others from the premises. *See, e.g., Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980) (considering whether the defendant: (1) had a possessory interest in the subject property, a purse in that case; (2) had the right to exclude others therefrom; and (3) took normal precautions to maintain his privacy); *Sharpe*, 44 Va. App. at 455-56.

The present case is thus distinguished from *Florida v. Jardines* and the circumstances of *Kentucky v. King*, as invoked by the defendant in argument. *Cf. Florida v. Jardines*, 133 S. Ct. 1409, 1417-18, 185 L. Ed. 2d 495, 504 (2013) (dog sniff at front door of homeowner's residence for purpose of drug detection constituted a search, requiring probable cause and a warrant); *Kentucky v. King*, 563 U.S. 452, 457, n. 1 (2011) (noting that the issue of standing was not before the Court because the state had conceded it below). There was no evidence as to the defendant's status at the townhouse, other than his presence there and his label as a "friend" of Brandon Smith.

Accordingly, once Faulcon was outside the townhouse, his seizure became analogous to that of any other suspect in public under the circumstances, and was amply supported by probable cause upon the facts recited above, or at least articulable suspicion, until he was positively identified by the victim "almost immediately" thereafter in the show up at the townhouse. *See, e.g., Jones v. Commonwealth*, 277 Va. 171, 180 (2009) (holding that a positive canine alert provides probable cause for a vehicle search); *Andrews v. City of Calais*, 2005 U.S. Dist. LEXIS 34778, at *33 (D. Me. 2005) (recommended decision of magistrate judge), *aff'd* 2005 U.S. Dist. LEXIS 34513 (D. Me. 2005), *aff'd* 196 Fed. Appx. 3 (1st Cir. 2006) ("The probable cause evidence included not only the officers' own observations, but the statements of witness and the scent track followed by the canine."). This conclusion is supported by the descriptions of the

suspects going into the townhouse, Officer Gilman and Uno tracking the suspects from the scene of the armed robbery to the same townhouse, the presence of a firearm in a vehicle near which the suspects were spotted, as well as the close proximity of the robbery location to the townhouse and the small lapse of time between the robbery and the entry into the townhouse by the defendant.

The Court additionally notes that the Commonwealth raised the doctrine of inevitable discovery in argument. However, we need not address this issue, as the Court decides cases on the narrowest grounds available. *See, e.g., Alexandria Redevel. & Hous. Auth. v. Walker*, 290 Va. 150, 772 S.E.2d 297, 300 (2015) ("[W]e strive to decide cases on the 'best and narrowest grounds available'.") (citation omitted). Having said that, Officer Duncan's stated plan if the suspects did not exit the townhouse was to "lock down" the scene and "set up a perimeter" to prevent any escape until he returned with a search warrant. It is reasonable for the Court to assume that the above actions, observations, and findings of Sergeant Smith and Officer Duncan, and the tracking of the robbers by Officer Gilman and his canine to the exact same address would have provided the probable cause necessary for the issuance of a search warrant.