# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Ortiz and Causey
Argued by videoconference


COMMONWEALTH OF VIRGINIA

v.      Record No. 1076-22-4

JONATHAN DANIEL MIHOKOVICH

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
NOVEMBER 15, 2022


### FROM THE CIRCUIT COURT OF FREDERICK COUNTY
William W. Eldridge, IV, Judge

Ryan W. Perry, Assistant Commonwealth's Attorney (Ross Spicer,
Commonwealth's Attorney, on briefs), for appellant.

Joseph R. Pricone (Mark B. Williams & Associates, PLC, on brief),
for appellee.


On July 1, 2020, deputies from the Frederick County Sheriff's Office entered the motel

room of Jonathan Daniel Mihokovich without a search warrant because they said they believed that

he was experiencing a drug overdose.  The trial court found that the emergency aid exception did

not apply and granted Mihokovich's motion to suppress evidence found in the room.  Pursuant to

Code § 19.2-398(A)(2), the Commonwealth appealed the trial court's order suppressing the

evidence.  The Commonwealth now argues on appeal that the trial court erred in "finding that the

officers acted unreasonably when they did not knock before entering and that entry into the hotel

room was not objectively reasonable under the emergency aid exception."

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND[1]

While on a foot patrol at approximately 4:00 p.m. at and around the Red Roof Inn on July 1, 2020, Deputies Marsten and Lewis of the Frederick County Sheriff's Office encountered an "impaired, intoxicated person," identified as Jesse Lake, coming out of the motel room where Jonathan Mihokovich was staying. The curtain on the motel room window was partially open so that the deputies could see Mihokovich and a woman lying in bed, their heads on the pillows and their bodies largely under the covers. Deputy Marsten noted that they appeared to be sleeping. Body camera footage showed that when the deputies first approached the room, Deputy Marsten said he would "make contact" with the people inside and started to knock on the door but then pulled his hand away without knocking.

The deputies talked with Lake for about ten minutes while they stood outside Mihokovich's motel room. During a pat-down search of Lake, Deputy Lewis found syringes and "a baggie of white powder," which Lake identified as fentanyl. Lake said he had used fentanyl in a van, but Deputy Lewis mistakenly thought that Lake said that Mihokovich also had used fentanyl in the van. Lake told the deputies that Mihokovich had an infection on his right foot and that he had carried Mihokovich into the motel room and put him in bed. Lake said that Mihokovich used drugs for pain due to his foot infection, but he had not seen him use any that day. Lake also said he had "no idea" whether there were drugs in the room. When asked by the deputies, Lake denied that Mihokovich had overdosed and was "yacked out."[2] He told Deputy

---

[1] In addition to testimony from Deputy Lewis, the trial court saw body camera footage from both Deputy Lewis and Deputy Marsten. We give deference to the trial court's interpretation of video evidence and review it "for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022).

[2] According to the record, "yacked out" means having overdosed on drugs.

Lewis that he had checked on Mihokovich after bringing him to the room, but he acknowledged that he did not know whether Mihokovich was awake when he left the room.

Deputy Lewis testified that he knew that there was a greater chance of an overdose with fentanyl and that "time is [of the] essence" if a person had overdosed. Although Deputy Lewis did not see any narcotics or drug paraphernalia on the bed or in the room when he looked through the window, he told Deputy Parker (also of the Frederick County Sheriff's Office) that someone may be "yacked out" inside the room. Deputy Parker said that they had enough information to obtain a search warrant, but Deputy Lewis responded that they should open the door "for safety" and told Deputy Parker to get the key for the room.

Deputies Lewis and Marsten continued to talk with Lake about his construction jobs—and that he also did drywall installation—while they waited about two more minutes for Deputy Parker to return with the room key. Neither deputy made any attempt to rouse the occupants of the room by shouting at them, tapping on the window, or knocking on the door. Deputy Lewis testified that although he had time to knock on the door while waiting for the key to see if the people in the bed could be roused, he did not knock because he was focused on his conversation with Lake. As Deputy Lewis approached the door with the key to open it, Deputy Marsten noted that the people in the room were both still sleeping. After Deputy Lewis then entered the room with his firearm drawn, the three deputies announced their presence and immediately secured the room.

Tessi Huddle, who was in the bed with Mihokovich, finally woke up about thirty seconds after the deputies had entered the room and announced themselves. The deputies did not immediately approach Mihokovich but asked Huddle if Mihokovich was breathing. When she said he was breathing, they asked her to wake him up. Huddle could not rouse Mihokovich, and

Lewis called the Frederick County Emergency Medical Services ("EMS"). EMS personnel soon arrived and administered Narcan to Mihokovich to successfully revive him.

While EMS personnel arrived and treated Mihokovich, Huddle gave the deputies consent to search the room. They found some marijuana and "meth pipes" before Mihokovich regained consciousness and objected to the search of the room. Huddle then revoked her consent, and the deputies stopped their search until they later obtained a search warrant.

Mihokovich was charged with one count of possession of a controlled substance, one count of distribution of a controlled substance, three counts of possession with intent to distribute a controlled substance, and four counts of conspiracy to possess with intent to distribute a controlled substance. Mihokovich filed a motion to suppress evidence, which the trial court granted after pretrial hearings on May 18, 2022 and June 8, 2022. Citing *Merid v. Commonwealth*, 72 Va. App. 104 (2020), *aff'd*, 300 Va. 77 (2021), the trial court noted that the emergency aid exception allowed police officers to enter without a warrant if they had "an objectively reasonable basis for believing that a person within the house, or residence, is in need of emergency aid." Stating that the emergency aid exception was fact-specific, the trial court concluded that under "the specific facts of this case, it was not reasonable that the deputies did not knock to see whether the individuals inside responded," because a simple "knock on the window, or door, could dispel whether emergency aid[] was needed by seeing if the individuals were unresponsive or not." The trial court emphasized both that the deputies had time to do this and that they had a direct view of the individuals in the room. Consequently, the trial court ruled that the emergency aid exception did not apply in this case.

Subsequently, at a sentencing hearing on an unrelated matter, the trial court found that Mihokovich had been overdosing on July 1, 2020 when the deputies entered the motel room. The Commonwealth then filed a request for clarification asking the trial court to clarify whether

Mihokovich's overdose was a factual finding that pertained to the suppression hearing and to clarify whether the deputies believed an overdose was occurring "could be a mistake of fact."

The trial court clarified that the suppression hearing and the unrelated sentencing hearing were two separate cases. Further, the trial court stated that the question it considered in the suppression matter was whether it was objectively reasonable for the deputies to believe that a person inside the motel room was in need of immediate emergency aid ***before*** *entering the motel room without a search warrant*—rather than whether Mihokovich was in fact overdosing. The trial court stated that "the mistake of fact" to which it referred actually concerned Deputy Lewis's mishearing and misunderstanding Lake to have supposedly said that Mihokovich had used fentanyl in the van with Lake. The trial court reaffirmed its conclusion that, whether or not Mihokovich used fentanyl in the van, the emergency aid exception did not apply under the specific facts of this case. The Commonwealth then appealed.

## II. ANALYSIS

In reviewing the trial court's decision to grant the suppression motion, this Court considers the evidence in the light most favorable to Mihokovich, as the prevailing party below, and grants him all reasonable inferences fairly deducible from that evidence. *See Sidney v. Commonwealth*, 280 Va. 517, 520 (2010); *Commonwealth v. Grimstead*, 12 Va. App. 1066, 1067 (1991). As the Supreme Court has emphasized, we review the trial court's "findings of historical fact for clear error." *Harris v. Commonwealth*, 266 Va. 28, 32 (2003) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). The application of the law to the facts is reviewed *de novo*. *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019).

### A. Warrantless Entry

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

The crux of Fourth Amendment analysis is whether law enforcement officers acted reasonably, as "only unreasonable searches and seizures" are prohibited. *King v. Commonwealth*, 49 Va. App. 717, 723 (2007). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Saal v. Commonwealth*, 72 Va. App. 413, 426 (2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). A warrantless entry into a home is "presumptively unreasonable" unless exigent circumstances are present. *Sharpe v. Commonwealth*, 44 Va. App. 448, 455 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). Furthermore, "[n]o less than a tenant of a house, or the occupant of a room in a boarding house, *McDonald v. United States*, 335 U.S. 451[ (1948)], a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures." *Stoner v. California*, 376 U.S. 483, 490 (1964). Thus, a registered occupant of a motel room, or guest of an occupant, has a reasonable expectation of privacy "equivalent to [that] of the rightful occupant of a house." *McCary v. Commonwealth*, 36 Va. App. 27, 36 (2001) (quoting *Servis v. Commonwealth*, 6 Va. App. 507, 514 (1988)).

One recognized exigency is the emergency aid exception, which "recognizes the 'right of the police to enter and investigate' when someone's health or physical safety is genuinely threatened." *Merid*, 72 Va. App. at 113 (quoting *Kyer v. Commonwealth*, 45 Va. App. 473, 480 (2005)). A warrantless entry is allowed under this exception "if the officers have '"an objectively reasonable basis for believing" . . . that "a person within [the house] is in need of immediate aid."'"[3] *Id.* (alterations in original) (quoting *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam)). *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (holding that "law

---

[3] The emergency aid exception also requires that once police officers enter a residence, the scope of any search they conduct must be "strictly circumscribed by the exigencies which justify its initiation." *McCarthy*, 73 Va. App. at 643 (quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)). Mihokovich did not challenge the scope of the initial search of the motel room, and the trial court did not address the issue in its ruling.

enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury").

As the Virginia Supreme Court has stated, "A determination of whether exigent circumstances justify a warrantless entry is not based on an analysis of the circumstances considered in hindsight, but is focused on review of the 'circumstances as they reasonably appeared to trained law enforcement officers to exist *when the decision to enter was made*.'" *Robinson v. Commonwealth*, 273 Va. 26, 41 (2007) (emphasis added) (quoting *Verez v. Commonwealth*, 230 Va. 405, 411 (1985)).  Consequently, the trial court can only consider information known to the deputies *before* they entered Mihokovich's room without a search warrant—and *cannot* consider information that the deputies discovered *after* they entered the motel room *without a search warrant*.  *See id.*  Therefore, the fact that EMS had to administer Narcan to Mihokovich in order to revive him is not something that we can consider under binding case law from the Supreme Court because the deputies did not have this information until *after* they entered Mihokovich's motel room without a search warrant.  It has been frequently stated that a person's home is his castle, and this maxim under the Fourth Amendment protects citizens from having police officers enter their home (or hotel room) without a search warrant unless there is sufficient cause to believe that exigent circumstances exist (e.g., a medical emergency) *before* the police enter without a search warrant.

However, "[o]fficers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception[,]" as long as they can identify objectively reasonable factors for believing assistance was needed.  *Fisher*, 558 U.S. at 49.  The Commonwealth argues that Deputy Lewis had an objectively reasonable basis for thinking Mihokovich was overdosing and needed immediate medical aid after Deputy Lewis saw Lake, an "impaired, intoxicated" individual, exit a motel room in which Mihokovich and a woman were

seen lying in a bed. Deputy Lewis mistakenly believed that Lake said that both Lake and Mihokovich had used fentanyl in a van before Lake carried Mihokovich into the motel room, and Lake told Deputy Lewis that he did not know whether Mihokovich was awake when he left the room.

However, we cannot consider only the circumstances relied on by the Commonwealth. Rather, we consider the totality of all the circumstances, and we view the evidence in the light most favorable to Mihokovich—as we must because he is the party who prevailed in the trial court. *See Sidney*, 280 Va. at 520; *see also Grimstead*, 12 Va. App. at 1067. Additional pertinent facts are that Lake told Deputy Lewis that Mihokovich used drugs for pain because his right foot was badly infected, but Lake said that he had not seen Mihokovich use any drugs that day. Lake said he put Mihokovich to bed after he carried him to the room, but he did not say he carried him because he was passed out. A reasonable inference is that Lake assisted Mihokovich because his infected foot made walking difficult. Lake did not describe Mihokovich as "unconscious." When Deputy Lewis asked if Mihokovich was "yacked out," Lake adamantly said that he was not.

Furthermore, based on Deputy Lewis's training and experience, he knew that a person suffering an overdose turned "blue or gray," but Mihokovich, who deputies could view through the window, did not appear to be "blue or gray"—nor did he appear to have difficulty breathing. *Cf. McCarthy*, 73 Va. App. at 635 (police officer investigating an anonymous call found a man lying on the floor of a motel room, "unconscious, pale, cool, sweating 'profusely,' and engaged in . . . 'agonal breathing'"). Deputy Marsten described Mihokovich and Huddle as "sleeping" with their heads on the pillows and their bodies largely under the covers. The Commonwealth contends that Marsten's description was subjective and thus not applicable to the analysis in this case. However, the observation that Mihokovich appeared to be "sleeping" was certainly a

factor to be considered in determining whether an objective, reasonable officer would have thought Mihokovich was overdosing and needed emergency aid or was simply sleeping in a bed in a motel room.

The deputies encountered Lake while on a routine foot patrol. They were not at the motel in response to a dispatch concerning a possible overdosed person. *Cf. McCarthy*, 73 Va. App. at 635 (police responded to anonymous call about man lying on motel room floor); *Merid*, 72 Va. App. at 109 (police responded to defendant's apartment after a call from a "concerned" relative). When they looked in the motel room through the window, they saw two people lying in a bed. They did not see any drugs or drug paraphernalia on the bed or in the room. The deputies showed little interest in the occupants of the room until they found fentanyl on Lake, and they continued to question Lake for approximately ten minutes before deciding to enter the room because they "might have somebody yacked out in there." Deputy Lewis testified that timing was critical in reviving an overdose victim, but the deputies made no attempt to rouse the occupants of the room by shouting to them, "Are you all right?" They did not try to get a response by tapping on the window or knocking on the door. Instead, having already talked with Lake for about ten minutes, they stood passively by chatting with a handcuffed Lake about his construction jobs and the fact that he also installed drywall, and helping him enjoy a cigarette during the two minutes it took Deputy Parker to get the room key. Deputy Marsten continued to observe that the occupants of the room were sleeping. Although one of the deputies had Narcan in his car, Deputy Lewis testified that they did not retrieve it from the police vehicle because EMS was going to arrive shortly with Narcan. Deputy Lewis did not even call EMS until after the deputies had entered the room and had secured it. Considering the totality of the circumstances, the deputies' conduct seemingly contradicts the Commonwealth's claim that this situation appeared to be a medical emergency that called for a warrantless entry to render

immediate aid. *See White v. Commonwealth*, 73 Va. App. 535, 556-57 (2021) ("To the extent it appears that there is no imminent change to the circumstances about to occur and that the status quo largely can be maintained while the officers seek a warrant, the situation is not 'urgent' for the purposes of an exigency analysis.").

In granting the motion to suppress, the trial court stated that "there is no bright line test of what an officer must do before they enter under the emergency aid[] exception" and that each situation is "fact specific." Under the facts here, the trial court determined that the warrantless entry was not objectively reasonable because the deputies did not try to rouse Mihokovich or Huddle, who appeared to be sleeping in the bed, by shouting to them, by tapping on the window of the room, or by knocking on the door, which they easily could have done while waiting for a key to open the room. If they had done so and gotten no response, the fact that the room's occupants failed to respond to the deputies' attempts to rouse them would have been another factor in determining that an emergency existed.

Although the Commonwealth argues that the trial court's ruling will require that police officers always knock before entering a person's home in an emergency aid situation, we certainly do not interpret the ruling that broadly. Indeed, contrary to what the Commonwealth argues, the trial court did not create "a knock and wait requirement" for the emergency aid exception. Instead, the trial court said that "there is no bright line test of what an officer must do before they enter under the emergency aid[] exception." The trial court said that "[t]he Fourth Amendment is a fundamental protection of our Constitution and must be strictly adhered to even when analyzing the facts of very specific cases of whether or not exigent circumstances apply." The trial court said that in this case, "[i]n order to form their objectively reasonable basis for believing that [Mihokovich] was in need of immediate aid[], a simple knock could have dispelled

any question as to whether that individual needed emergency aid[],” which would have “justified the exigent circumstance.”

The trial court recognized that “overdoses are an extreme problem in this community. Police are tasked with a very difficult job to make split second decisions that may or may not save someone’s life.” The trial court stated that “there are circumstances obviously where [the] emergency aid[] exception applies,” but “they are very fact specific.” Contrary to what the Commonwealth claimed, the trial court certainly did not find that knocking is required in every case before entering into a residence or motel room under the emergency aid exception. Rather, the trial court considered as an important factor specific to this case the fact that the deputies made absolutely no effort to attempt to rouse the room’s occupants when they had the time and opportunity to do so before entering the room without a search warrant.

Officers often knock, as a matter of pure courtesy, before entering a residence. However, there is no legal requirement that they do so before entering under the emergency aid exception. The exception requires only that police officers have an objectively reasonable belief under the specific facts of the situation that an individual is in need of immediate emergency assistance.

Under the facts of this case, however, the trial court found that the exception did not apply. The court noted that the deputies could see Mihokovich and Huddle lying in bed, that one of the deputies stated that they were sleeping, and that there were no drugs or drug paraphernalia in sight inside of the room. There was no indication that either of them was experiencing any physical distress such as a blue or gray skin tone or labored breathing. Emphasizing the specific facts of this case, the trial court found it was unreasonable for the deputies to stand outside the room for a while—plus for two minutes more while a key to the room was obtained—without making any attempt to see if they could get a response from the two occupants, whom they could see only a few feet away from them through the window to the motel room. Simply shouting to

them through the window or door, tapping on the window, or knocking on the door readily could have dispelled any question as to whether Mihokovich needed emergency aid. Based on the specific facts of this case, we conclude that the trial court did not err in determining that entering the motel room without a search warrant was not objectively reasonable.

## B. Suppression of the Evidence

A review of a trial court's grant of a motion to suppress presents a two-step analysis: (1) whether a Fourth Amendment violation occurred and (2) whether the application of the exclusionary rule was the appropriate remedy. *See Jones*, 71 Va. App. at 383. We do not reach the question of the application of the exclusionary rule because the Commonwealth's assignment of error on appeal to this Court does not encompass it.[4] *See* Rule 5A:20(c)(1) (stating that "[o]nly assignments of error listed in the [opening] brief will be noticed by this Court"); *see also* Rule 5A:12(c)(1) (pertaining to assignments of error in petitions for appeal). The Commonwealth's assignment of error states only that the trial court erred in "finding that the officers acted unreasonably when they did not knock before entering and that entry into the hotel room was not objectively reasonable under the emergency aid exception." However, the Commonwealth did not also raise as error that, even if a Fourth Amendment violation occurred, the trial court erred by applying the exclusionary rule as the United States Supreme Court does

---

[4] The issue is also barred by Rule 5A:18. As Mihokovich asserted at oral argument before this Court, the Commonwealth did not argue in the trial court that even if a Fourth Amendment violation occurred, the trial court still erred in applying the exclusionary rule. An argument on one point does not also preserve an argument on a related point. *See Bethea v. Commonwealth*, 297 Va. 730, 743-44 (2019) (an objection to a court's ruling must be specific and timely). Thus, we find that Rule 5A:18 bars our further consideration of this issue. *See Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015) (stating that the purpose of Rule 5A:18 is "to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials").

At oral argument, the Commonwealth contended that, even if the issue had not been preserved, we could consider the issue under Rule 5A:18's ends-of-justice exception. Given what a narrow exception the ends-of-justice exception is and given the facts of this particular case, we do not agree that the ends-of-justice exception applies here.

- 12 -

not require that the exclusionary rule be implemented every time there is a Fourth Amendment violation.

### III. CONCLUSION

In short, police officers on a routine foot patrol that took them through the premises of a motel indicated that they were concerned about whether Mihokovich, who appeared through the window of the motel room to be asleep in bed with a woman, may have overdosed on fentanyl and might need emergency medical aid. They observed his friend Jesse Lake leave Mihokovich's motel room apparently under the influence. Lake admitted to the deputies that he himself had recently taken fentanyl, and after the deputies' pat down of Lake, they found syringes and fentanyl in his pocket. Lake also told the deputies that he had helped carry Mihokovich to the motel room and put him in the bed there although he adamantly denied that Mihokovich had taken fentanyl himself or was overdosing. The deputies talked with Lake for approximately ten minutes before deciding to get a key to Mihokovich's room and enter that motel room without a search warrant. During this entire period, including the additional two minutes that it took for one of the deputies to go and retrieve a room key, the deputies did not tap on the window or shout through the window to Mihokovich or the woman, yell to ask the occupants about whether they needed medical help, or knock on the wall or door to see if they could rouse Mihokovich or the woman to determine if they were all right. When the key finally arrived, without trying first to get any response, they simply swiped the key, opened the door, and entered the room. Once in the room, they waited a considerable time before trying to rouse Mihokovich themselves and first relied on the woman in bed with him to see if he was breathing. Only after doing these things did they call EMS to come. They further did not retrieve the Narcan that one of the deputies had in his police vehicle because a deputy stated that EMS would bring Narcan with them. Viewing the totality of the evidence in the light most favorable to

- 13 -

Mihokovich, as we must because he prevailed below in the circuit court, the trial judge did not err in finding a violation of the Fourth Amendment under the specific facts of this particular case because binding Supreme Court case law makes clear that the court can only consider what information the officers knew before they entered the hotel room—not what they learned after they entered it without a search warrant.

Contrary to the Commonwealth's argument on appeal, the trial judge here did not create any "knock and wait requirement" for the emergency aid exception to apply. The trial court simply found here that an objectively reasonable police officer would have tried to do something to rouse the two people he could see through the window seemingly sleeping in the bed. The officers could have tried to do so by knocking on the door or wall to the motel room, tapping or rapping on the window through which they could see them, or yelling to them to question whether they were all right. If the officers had then received no response during this time that they stood mere feet away outside Mihokovich's motel room, there almost certainly would have been an objective basis to enter the motel room without a search warrant under the emergency aid exception. However, under these particular circumstances and remembering the adage that a person's home is his castle (as well as the Supreme Court case law that equates a person's Fourth Amendment protection in a motel room to that in a home), the circuit court did not err in finding that the entry of the motel room without a search warrant was not objectively reasonable.

For all of these reasons, the record before us on appeal supports the conclusion that the trial court did not err in finding that the emergency aid exception did not apply in this case—and that the Circuit Court of Frederick County did not err in granting Mihokovich's motion to suppress. We expressly do *not* hold, however, that police officers must knock before entering whenever the emergency aid exception applies.

*Affirmed.*